622 A.2d 1388

**E.J.M. and H.M. and E.M.**

**v.**

**ARCHDIOCESE OF PHILADELPHIA, the Church of Christ the King, and Franciscan Fathers of Green Bay, A/K/A Order of Friars Minor of the Roman Catholic Church and Father Terrance Pinkowski C/O Franciscan Fathers of Green Bay, A/K/A Order of Friars Minor of the Roman Catholic Church.**

**Appeal of E.J.M.**

Superior Court of Pennsylvania.

Argued Dec. 8, 1992.

Filed April 7, 1993.

the Restatement, we often do so on our own terms, and we should read the Restatement (Second) in light of our prior law.

450

Laurence S. Berman, Philadelphia, for appellant.

Martin G. Malloy, Philadelphia, for Franciscan Fathers, appellee.

Bruce W. McCullough, Philadelphia, for Archdiocese of Philadelphia, appellee.

Before CAVANAUGH, BECK and POPOVICH, JJ.

BECK, Judge:

This appeal requires us to decide whether, under the circumstances of this sexual assault and battery case, the discovery rule should be applied to toll the running of the applicable statute of limitations.

The appeal is taken from the trial court's order granting summary judgment in favor of defendant-appellee, Franciscan Fathers of Green Bay, on the ground that the action was instituted after the expiration of the statute of limitations and that the discovery rule should not be applied to toll the running of the statute of limitations. We find no error in this determination and affirm.

In August 1989, appellant E.J.M. instituted suit against the Archdiocese of Philadelphia, The Church of Christ the King, the Franciscan Fathers of Green Bay, and Father Terrance Pinkowski. The complaint alleged that appellant, a member of a devoutly Catholic family, began to attend weekly prayer groups at defendant Church of Christ the King in late 1976. At that time, appellant was fourteen years old. Defendant Father Pinkowski was the leader of the prayer group. Father Pinkowski was also a teacher at Archbishop Ryan High School, an institution operated by defendant Archdiocese of Philadelphia and attended by appellant. Father Pinkowski lived at the Friary of defendant Franciscan Fathers of Green Bay, the order to which Father Pinkowski belonged.

The complaint further alleged that shortly after appellant began to attend Father Pinkowski's prayer group, he also began attending a weekly mass at the Friary and soon formed an intention to become a Catholic priest. Father Pinkowski then undertook the role of spiritual leader to appellant and became intimately acquainted with appellant's family. Appellant alleges that he both admired and trusted Father Pinkowski. Tragically, appellant also alleges that Father Pinkowski abused this trust by sexually molesting appellant on countless occasions in the period from 1976 through 1981.

Although appellant reached the age of majority in 1980 and concedes that the alleged abuse ended in 1981, he did not institute suit against any of the defendants until late 1989. Appellant's proffered reason for his delay is that he did not become aware of the psychological and emotional injuries he suffered as a result of the alleged abuse until late 1988. Appellant alleges at that time he realized the psychological damage that had been inflicted on him. Because appellant's

contentions regarding what he knew and did not know concerning his injuries at the time the abuse was occurring are crucial to our decision, we quote those portions of appellant's affidavit in opposition to summary judgment that are relevant to this issue:

In the course of preparing me for the priesthood defendant Father Pinkowski committed against me (what I now know to be) sexual abuse. At the time of the acts he told me that this therapy was necessary for my spiritual growth and preparation for ordination, and that it would rid me of pride unpleasing to God.

5. Because of the aspiration I had to be a priest and the exalted position in which priests were regarded within my family, I did not believe or consider that defendant Father Pinkowski's actions with me were wrong. My mindset was that—because he was a priest—he had to be right about this therapy and training being necessary for me to become a good priest. I dealt with my confusion about this therapy by rationalizing that there was something wrong with me. I thought I had a problem.

.     .     .     .     .

6. I was married on June 25, 1988. In late April or early May 1988 I began making wedding preparations. My parents expected that defendant Father Pinkowski would be invited. They were shocked when I told them that I did not want him to attend my wedding. They told me that if he was not invited to the wedding that they would not come. I then revealed to them that I did not want him to come to the wedding because of what he had done to me, which I then explained to them.

7. Prior to this time I had never told anyone what had happened and I never considered that defendant Father Pinkowski's actions were abusive and injurious to me. I felt I was at fault. I felt guilty and sinful.

A little over a year after appellant's alleged realization concerning the damage he had suffered as a result of Father Pinkowski's actions, he filed the instant lawsuit. He pleaded causes of action for sexual assault and battery, clergy malprac-

tice, and intentional infliction of emotional distress against Father Pinkowski.[1] He also sought to hold appellee Franciscan Fathers liable for Father Pinkowski's actions on a theory of respondeat superior. Finally, he pleaded a separate cause of action for negligent hiring and supervision against appellee.

On October 24, 1991, appellee filed a motion for summary judgment, alleging that the applicable statute of limitations had expired long before appellant filed suit. Appellant responded by arguing that the discovery rule should be applied to toll the statute of limitations until 1988 when he allegedly first became aware of the psychological injury he had suffered as a result of Father Pinkowski's actions. On February 19, 1992, the trial court granted summary judgment in favor of appellee, having rejected appellant's discovery rule argument. This timely appeal followed.

Our standard of review of this appeal is as follows:

On review of an order granting summary judgment, we must determine whether the moving party has established that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Pa. R.C.P. 1035(b). *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 468–69 (1979). In making this determination, we must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. *Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.,* 320 Pa.Super. 291, 467 A.2d 330 (1983). All doubts as to the existence of a factual dispute must be resolved in favor of the non-moving party and the entry of summary judgment is appropriate only in the clearest of cases. *Thompson Coal, supra.*

*Mentzer v. Ognibene,* 408 Pa.Super. 578, 597 A.2d 604, 607 (1991).

1. Although appellant was initially joined by his parents as co-plaintiffs in this action, by praecipe filed March 1, 1990, the claims of appellant's parents were voluntarily dismissed as to all defendants. Moreover, by court order dated December 30, 1989, appellant's count alleging clergy malpractice was dismissed for failure to state a cause of action.

Appellant's action against appellee is controlled by the statute of limitations contained in 42 Pa.C.S.A. § 5524, which provides in pertinent part:

The following actions and proceedings must be commenced within two years:

(1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

. . . .

Our Supreme Court has very recently described how the discovery rule can operate as an exception to the application of a statute of limitations, as follows:

It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period. *Shaffer v. Larzelere*, 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). "Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983).

Generally, once the prescribed statutory period has expired, the complaining party is barred from bringing suit. The "discovery rule," however, is an exception to that rule, and its application tolls the running of the statute of limitations. The "discovery rule" provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. *Schaffer* [410 Pa.] at 406, 189 A.2d at 270. The "discovery rule" arises from the inability of the injured party, despite the exercise of reasonable diligence,

to know of the injury or its cause. *Pocono* [503 Pa.] at 85, 468 A.2d at 471. Its purpose is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury. *Pounds v. Lehman,* 384 Pa.Super. 358, 363, 558 A.2d 872, 874 (1989).

Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury. *Smith v. Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 142, 153 A.2d 477, 481 (1959). Specifically, the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law. *Sadtler v. Jackson–Cross Co.,* 402 Pa.Super. 492, 501, 587 A.2d 727, 732 (1991).

*Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1042–43 (1992).

The question of how the discovery rule operates specifically in the context of a sexual abuse case has been closely considered by the courts of several jurisdictions. However, there is only one reported Pennsylvania appellate court decision on the subject and that decision does not deal with the precise issue presented here. In *Bowser v. Guttendorf,* 373 Pa.Super. 402, 541 A.2d 377 (1988), plaintiff sued her former foster parents for sexual assault and battery and negligent and intentional infliction of emotional distress. She alleged that she had been sexually molested by her foster father when she was a minor and that her foster mother had negligently permitted the abuse to continue. A panel of this court affirmed the trial court's grant of judgment on the pleadings for the foster mother, finding that the action had not been commenced until six years after the alleged abuse and, therefore, four years

after the expiration of the statute of limitations.[2]

The *Bowser* court specifically rejected plaintiff's arguments that the statute of limitations should be tolled because she was rendered incapable of communicating the events contained in her complaint as a result of a physical disability and because of fraud and concealment by her foster father. The court cited longstanding Pennsylvania precedent establishing that the physical disability of the plaintiff did not toll the limitations period, *e.g. Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967), and found no fraud by the foster mother, in whose favor judgment had been granted. *Id.*, 373 Pa.Super. at 404–06, 541 A.2d at 379.

The panel also rejected plaintiff's argument that the discovery rule should be applied because she was unable to discover her injury and the culpability of her foster parents during her minority. The panel found that plaintiff had alleged clearly discoverable physical injuries and that under the law as it existed at the time plaintiff's cause of action had accrued, *see* fn. 2, *supra,* her minority alone did not alter her responsibility to discover who was culpable and sue them within the statutory limitations period. *Id.* at 406–08, 541 A.2d at 380.

■ Unfortunately, as this summary of the *Bowser* holding reveals, *Bowser* is not sufficiently analogous to the instant case to provide guidance in resolving the issues before us. Here, appellant does not argue that he suffered from a physical disability or that his minority at the time of the abuse prevented him from discovering his injury or its cause. In-

---

**2.** In *Bowser,* we found that the provisions of 42 Pa.C.S.A. § 5533(b), which tolls the statute of limitations during a plaintiff's minority, could not be applied retroactively to revive Ms. Bowser's claim, which had already been barred at the time section 5533(b) became effective. *Id.* at 404–06, 541 A.2d at 379.

We note that the provisions of section 5533(b) are equally of no avail to appellant herein, albeit for a different reason. Section 5533(b) permits a plaintiff whose cause of action accrues during minority to bring suit within the applicable limitations period, calculating that period as beginning when the plaintiff reaches majority. In the instant case, appellant would have had two years from the age of majority to institute suit for any cause of action that accrued during his minority. However, appellant did not sue until nine years after he had reached majority.

stead, appellant's precise argument is that although he always knew what Father Pinkowski had allegedly done to him, i.e. the actual physical acts performed, and never repressed his memories of those acts, he nevertheless did not know until approximately one year before filing suit that those acts were "abuse" and had caused him psychological and emotional harm. Appellant contends that his failure to realize that he had been "abused" and harmed thereby resulted both from his own respect for and trust in Father Pinkowski and Father Pinkowski's assurances to appellant that the sexual acts being performed were necessary for appellant's spiritual development. We must decide whether the trial court erred in finding that these allegations are insufficient as a matter of law to exempt appellant from the normal operation of the statute of limitations.

Faced with this lack of directly applicable Pennsylvania precedent, the trial court relied on the recent federal court decision in *Baily v. Lewis,* 763 F.Supp. 802 (E.D.Pa.1991), *aff'd mem.,* 950 F.2d 721 (3d Cir.1991), where the court engaged in a thoroughgoing analysis of the applicability of the discovery rule in sexual assault and battery cases under Pennsylvania law. Although we recognize that *Baily* involved a factual setting somewhat different from that presented in the instant case, in that the *Baily* plaintiff alleged that he had repressed all memory of having been abused for fifteen years, we nevertheless also find the *Baily* court's analysis highly instructive.

The *Baily* court began by summarily reviewing how other jurisdictions had applied the discovery rule to civil sexual abuse cases. The court noted that plaintiffs in such cases generally raised one of two claims in support of application of the discovery rule. Such plaintiffs alleged that they could not sue within the limitations period either because they had repressed all memory of the abuse and were, therefore, unaware of it or because, despite the fact that they did remember that the abuse had occurred, they nevertheless did not know it had harmed them or was wrongful. As the *Baily* court indicated, a survey of cases decided by courts across the

nation reveals that courts are split in deciding both types of cases. *Id.* at 805–06.

Some courts find that considerations of equity mandate application of the discovery rule in repression of memory cases because the abuse itself caused the repression. *See, e.g., Johnson v. Johnson,* 701 F.Supp. 1363 (N.D.Ill.1988) (applying Illinois law); *Mary D. v. John D.,* 216 Cal.App.3d 285, 264 Cal.Rptr. 633 (6 Dist.1989), *review dismissed,* —— Cal.3d ——, 275 Cal.Rptr. 380, 800 P.2d 858 (1990). Other courts refused to apply the discovery rule to such cases, however, relying on the general principles underlying statutes of limitation, such as the risk of stale claims and problems of proof. *See, e.g., Tyson v. Tyson,* 107 Wash.2d 72, 727 P.2d 226 (1986) (overruled by statute, Wash.Rev.Code ch. 144 S.S.B. No. 6305).

As to cases involving plaintiffs who did not repress the memory of the abuse yet who did not realize the harm it had caused them or the wrongfulness of the defendant's actions, courts once again are divided. Whereas some find that the emotional trauma suffered by abuse victims justifies tolling the statute of limitations, *see, e.g., Hammer v. Hammer,* 142 Wis.2d 257, 418 N.W.2d 23, 27 (1987), others find that plaintiffs who remember the abuse are on notice that they might have been harmed and have a duty to investigate whether they have a cause of action. *See, e.g., Hildebrand v. Hildebrand,* 736 F.Supp. 1512, 1521 (S.D.Ind.1990) (applying Indiana law).

Having considered the analyses pursued by those jurisdictions that had considered this issue, the *Baily* court determined that even in a repression of memory case, the Pennsylvania Supreme Court would not permit application of the discovery rule to toll the statute of limitations. The court based this conclusion on several crucial aspects of the Pennsylvania discovery rule and on the strong policy of Pennsylvania courts favoring the strict application of statutes of limitation. *Baily,* 763 F.Supp. at 806.

First, the court found that Pennsylvania courts applied the discovery rule in only the most limited of circumstances, where the plaintiff *could not,* despite the exercise of reason-

able diligence, discover his or her injury or its cause. *Id.* at 806–07. In many Pennsylvania discovery rule cases, the inability of the plaintiff to discover his or her injury arose from the nature of the injury itself. For example, the rule has been applied in medical malpractice cases where the plaintiff has no reason to suspect anything is amiss and the physician's malpractice is not discovered by the plaintiff until it begins to manifest itself in perceptible symptoms. *See Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). In contrast, in a case such as this where the underlying cause of action is fundamentally one for battery, which basically is defined as an intentional unconsensual harmful contact, a plaintiff will ordinarily know all he or she needs to know concerning the injury and its cause at the moment the battery occurs. *See Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081, *allo. denied,* 524 Pa. 621, 571 A.2d 383 (1989). It is the rare battery case where such knowledge is not readily discernable. *Id.* at 147, 557 A.2d at 1088 (in lack of informed consent case involving surgical procedure, technically a battery action, plaintiff may not know of the non-consensual touching until injury caused thereby manifests itself).

Second, the *Baily* court correctly observed that under Pennsylvania law, "[t]he standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective one." *Redenz by Redenz v. Rosenberg,* 360 Pa.Super. 430, 435, 520 A.2d 883, 886, *allo. denied,* 516 Pa. 635, 533 A.2d 93 (1987). In other words, Pennsylvania law does not permit the tolling of a statute of limitations on account of an incapacity of the particular plaintiff which allegedly impaired his or her ability to discover the injury or its cause. For example, Pennsylvania statutory law specifically does not permit tolling during a period of insanity or imprisonment of the plaintiff. 42 Pa.C.S.A. § 5533(a). As a panel of this court has very recently confirmed, "[i]nclusion of a plaintiff's mental incapacity as a factor to be considered in determining the reasonableness of plaintiff's diligence runs counter to [the reasonable person standard.]" *A. McD. v. Rosen,* 423 Pa.Super. ——, ——, 621 A.2d 128, 131 (1993),

(quoting *Barren by Barren v. United States*, 839 F.2d 987, 994 (3d Cir.1988)). *See also Bowser, supra; Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967).

Lastly, the *Baily* court determined that under Pennsylvania law, the fact that a plaintiff is not aware that the defendant's conduct is wrongful, or legally actionable, is irrelevant. The plaintiff need only know that he or she has been injured and the cause of the injury—once this is known the plaintiff must investigate to determine if the defendant's actions give rise to a legal remedy. *Id.* at 806–07. *See also Brunea v. Gustin,* 775 F.Supp. 844 (W.D.Pa.1991); *Citsay v. Reich,* 380 Pa.Super. 366, 370–71, 551 A.2d 1096, 1098 (1988).

Reasoning from these principles, the *Baily* court concluded that the fact that the plaintiff had repressed the memory of the abuse did not toll the statute of limitations, since the only relevant question was whether she knew that the abuse was occurring at the time it was occurring and knew the identity of the perpetrator. The fact that she thereafter suffered from a mental incapacity to remember the abuse was, in the court's view, irrelevant to the discovery rule analysis. *Baily,* 763 F.Supp. at 810.

We concur in the *Baily* court's statements regarding the general parameters of the Pennsylvania discovery rule and the principles that have guided Pennsylvania courts in applying the rule. Since the facts presented in this case are not the same as those presented in *Baily,* we need not and do not opine on whether we agree with the *Baily* court's application of those principles to a repression of memory case. Rather, we need only decide how those principles are properly applied in a case where the plaintiff allegedly did not know that the acts being inflicted upon him were "abuse" and would result in psychological harm.

█ In our view, this factual distinction greatly facilitates our decision, since it is perfectly clear that this case does not fall within the extremely limited applicability of the Pennsylvania discovery rule. This is simply not a case where the plaintiff, despite the exercise of objectively measured reason-

able diligence, *could not* know of his injury and its cause within the limitations period. Appellant admits that he knew the abuse was occurring and who was inflicting it, both when it happened and throughout the eight years after the abuse ended and before appellant sued. What appellant did not know, i.e. that the physical acts allegedly performed on him by Father Pinkowski were "abuse" and were causing psychological harm, is not relevant to a discovery rule analysis.

As the *Baily* court correctly indicated, appellant need not have known that what was happening to him was "abuse," i.e. was wrongful, or precisely what type of psychological or emotional harm he would suffer as a result. Once he knew what was happening and who was doing it, he had the duty to investigate these questions and to institute suit within the limitations period.

Moreover, the affidavit submitted by appellant in opposition to summary judgment, from which we have quoted at length hereinabove, clearly reveals that appellant *was* aware, if not that he had been "abused," nevertheless that something very troubling and extraordinary was happening to him. Appellant states that he felt "confused" about what Father Pinkowski was doing to him, thought "something was wrong with me," and "felt guilty and sinful." Clearly, appellant not only knew all the relevant facts regarding the abuse and the abuser, but he also knew that something was very wrong with the situation in which he found himself.

■ The foregoing sections of appellant's affidavit also constitute a sufficient response to appellant's argument that Father Pinkowski fraudulently concealed the abusive nature of the acts he was performing on appellant by assuring him that these acts were necessary for appellant's preparation for the priesthood. It is true that Pennsylvania law recognizes that fraudulent concealment by the potential defendant can result in the tolling of the statute of limitations. The Supreme Court has described the fraudulent concealment doctrine as follows:

Where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry," the defendant is estopped from invoking

the bar of the statute of limitations. *Schaffer v. Larzelere*, 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967); *Nesbitt v. Erie Coach Company*, 416 Pa. 89, 204 A.2d 473 (1964). Mere mistake, misunderstanding or lack of knowledge is insufficient however, *Schaffer v. Larzelere, supra;* and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Nesbitt v. Erie Coach Company, supra.*

*Molineux v. Reed*, 516 Pa. 398, 532 A.2d 792, 794 (1987).

■ We find appellant's allegations regarding Father Pinkowski's assurances that the physical acts being performed on appellant were necessary for his spiritual development insufficient to constitute fraudulent concealment. We have previously held that a defendant's general assurances that a situation or condition being experienced by the plaintiff is normal do not rise to the level of fraudulent concealment where the plaintiff's own common sense should inform him that he has been injured. *DeMartino v. Albert Einstein Medical Center*, 313 Pa.Super. 492, 460 A.2d 295 (1983).

This is precisely the situation presented here. The alleged abuse in this case continued for years and only ended when appellant was twenty years old. It is beyond comprehension that appellant would not or should not have questioned whether his relationship with Father Pinkowski was truly aimed solely at appellant's preparation for the priesthood. In fact, appellant's own affidavit belies such a conclusion, for therein appellant indicates that he in fact was *not* completely lulled into a sense of security by Father Pinkowski's assurances. Appellant did recognize that something was amiss, and although he allegedly blamed himself for these feelings, that alone does not relieve him of the duty to investigate and bring suit within the limitations period.

The order of the trial court is affirmed.