646 A.2d 573

**John J. BEDNAR, Appellant,**

v.

**John E. MARINO, Executor of the Estate of John P. Marino, Deceased (at 1592).**

**John J. BEDNAR, Appellant,**

v.

**HEIGHTS PLAZA MATERIALS, INC. and John P. Marino (at 1593).**

Superior Court of Pennsylvania.

Argued March 15, 1994.

Filed Aug. 15, 1994.

418

Errol S. Miller, Pittsburgh, for appellant.

Harold Gondelman, Pittsburgh, for appellees.

Before WIEAND, DEL SOLE and FORD ELLIOTT, JJ.

WIEAND, Judge.

The history of this litigation is long and tortured. In March, 1977, John Bednar, trading and doing business as Natrona Slag Company, leased real estate from John P. Marino and Alex Marino for the purpose of operating a slag recycling plant thereon. Pursuant to the terms of the parties' lease agreement, Bednar was to use the demised premises to mine, remove and sell the ferrous materials, scrap metals and aggregate already in, under and upon the leased property, as well as any materials brought onto the premises by Bednar for subsequent processing. Plaintiff's rent was to be determined according to an agreed percentage of the gross income generated from sales of the various processed materials. The term of the lease was for four years, beginning January, 1977; and the agreement gave Bednar an option to renew for another four year period. The agreement provided, in pertinent part, as follows:

> After the last day of the term hereof or upon any earlier termination of the term, Bednar shall surrender and yield to Marino the demised premises in good order and condition; provided however, that if termination is by mutual consent, or by expiration of the four (4) year term or any renewal hereof Bednar shall have a period of three (3) months following the last day of the term hereof to remove all fixtures, including equipment, machinery and plant (hereby classified as fixtures) of any kind used by him in his operations from the premises and to sell any materials still held in stock subject to the terms of this Lease including rents; provided however, that no operations of any kind

other than removal of said fixtures or sales from stock shall be conducted by Bednar during such nine month period.

In 1978, the lease was amended to extend the term thereof to December 31, 1984.

By letter dated May 7, 1984, Bednar informed John P. Marino that he would not exercise his option to renew the lease. In May, 1985, when Bednar still had not removed his plant, equipment and materials from the premises, as required by the terms of the lease, John P. Marino commenced an action in ejectment against Bednar.[1] In October, 1985, Marino commenced a second action against Bednar which sought to enjoin Bednar from resuming any operations on the premises. On February 14, 1986, a preliminary injunction was granted which enjoined Bednar from resuming operations on the premises or from interfering with the property or those lawfully thereon. On June 2, 1986, Bednar was found in contempt of the preliminary injunction and sentenced and committed to jail for a period of thirty days.[2] The ejectment and equity actions were then consolidated by the court; and, on July 18, 1986, the trial court reaffirmed its preliminary injunction and found that the lease under which Bednar had occupied the Marino premises had expired on September 30, 1985. Specifically, the trial court found that the three month period provided for in the lease for removal of the lessee's property and for sale of stockpiled goods had been extended for an additional six months by agreement of the parties. Accordingly, the trial court determined that Heights Plaza,

1. This action was commenced by Marino on his own behalf and as managing partner of a partnership consisting of Lucy Marino, John D. Marino and successors to the interests of Alex Marino.

2. The trial court, in finding Bednar in contempt of its order, also provided that Bednar could purge himself of such contempt and avoid the sanction of incarceration if he would commit and promise in open court that he would "cease and desist from performing any and all conduct in violation of the Court's Order, including resuming slag processing operations or resuming slag processing operations under premises of the Plaintiffs in this case, and from interfering with the property of the Plaintiff or those lawfully upon the premises acting pursuant to the authority [of] the Plaintiff...." Bednar did not avail himself of this option.

the successor to the Marino interests,[3] was entitled to sole and exclusive possession of the subject premises from and after October 1, 1985, and that Bednar had thirty days in which to remove his plant, fixtures and equipment. Bednar again failed to comply with the court's order. On October 8, 1986, therefore, the trial court entered several orders which, inter alia, (1) held Bednar in contempt for failing to dismantle and remove his plant and equipment; (2) directed the sheriff to employ a company to dismantle the plant, and also remove the machinery and fixtures, and conduct a public sale thereof; and (3) directed the sheriff to bill Heights Plaza for the cost of dismantling and removing the plant and equipment and thereafter to pay the proceeds of the public sale to Heights Plaza with the shortfall taxed to Bednar as costs.[4]

Bednar commenced an action against Heights Plaza on June 5, 1992, and an additional action against the estate of John P. Marino on January 6, 1993, to recover damages for the landlord's alleged interference with his attempt to obtain financing from a bank and also to recover a share of the proceeds resulting from defendants' alleged sale of inventory which had remained on Heights Plaza's premises after the lease had terminated.[5] According to the averments of the complaint, at some point in time prior to December 31, 1984, plaintiff attempted to purchase the property adjacent to the leased premises. The property was owned by Burrell Con-

3. The Marinos' interests in the leased premises had been conveyed to Heights Plaza Materials, Incorporated, which was subsequently substituted as the plaintiff in the ejectment and equity actions.

4. In a memorandum opinion, the Superior Court affirmed the trial court's orders which (1) entered a verdict in favor of Heights Plaza in the ejectment action; and (2) enjoined Bednar from engaging in business on Heights Plaza's premises or interfering with its property. *Heights Plaza Materials, Inc. v. Bednar*, 382 Pa.Super. 651, 549 A.2d 1345 (1988), *allocatur denied*, 521 Pa. 612, 557 A.2d 344 (1989). In a second memorandum opinion, the Superior Court affirmed the trial court's order directing the sheriff to pay the proceeds from the auction of Bednar's equipment and fixtures to Heights Plaza. *Heights Plaza Materials, Inc. v. Bednar*, 403 Pa.Super. 641, 579 A.2d 422 (1990), *allocatur denied*, 526 Pa. 635, 584 A.2d 318 (1990).

5. The actions, which are virtually identical to each other, were consolidated for purposes of the instant appeal.

struction Company and Bednar had been storing some of his inventory and by-products thereon with the owner's permission. Bednar averred he was interested in purchasing the property so that he could relocate and continue his operations when his lease expired in December, 1984. Bednar sought financing from a certain bank in order to purchase the Burrell property, but the requested financing was denied because Marino had allegedly informed the bank that Bednar was a poor credit risk. Thereafter, according to the complaint, Marino purchased the Burrell property himself. Despite Marino's purchase of the property, Bednar continued to store his inventory and by-products thereon.

The complaint also avers that at the time the lease was terminated in December, 1984, Bednar had leveled off, scraped and stored four hundred thirty-seven thousand (437,-000) tons of aggregate which still required aging, sizing and processing prior to its sale.[6] Following the termination of the lease, Bednar contends, he was not permitted to sell any of the aggregate after it had aged, nor was he paid for the work he had done on the product during the term of the lease. Bednar also contends that as of December 31, 1984, he had stored on the adjacent property twenty five hundred (2,500) tons of "B" pitscrap, over forty (40) tons of stainless steel, over forty (40) tons of "No. 1" steel, and over two thousand (2000) tons of regular pitscrap. According to the complaint, after the lease was terminated, Marino seized the inventory which had been stockpiled on the adjacent property and transferred it to Heights Plaza without his permission. Thereafter, beginning on November 4, 1986, Heights Plaza sold the inventory without providing plaintiff with an accounting of such sales and without paying to plaintiff any portion of the proceeds.

When Bednar commenced the present actions in 1992 and 1993, he sought to recover (1) damages for Marino's alleged interference with his attempt to obtain financing from the bank; (2) a share of the proceeds from the sale of the inventory left on the adjacent property; (3) a share of the

6. According to the complaint, it is necessary to age the aggregate for a period of two years before it can be sold.

proceeds from the sale of aggregate that plaintiff had prepared for final aging, or alternatively; (4) the quantum meruit value of his services in preparing the aggregate for sale; and (5) punitive damages. The defendants filed answers containing new matter in which they asserted, inter alia, that Bednar's claims were barred by the applicable statutes of limitations. Thereafter, the defendants filed motions for summary judgment. The trial court applied the four year statute of limitations applicable to actions on contract, 42 Pa.C.S. § 5525(8), and held that all claims based on the lease agreement, including the claim for quantum meruit, were barred after September 30, 1989, or four years after the expiration of the lease. The trial court also determined that the six year statute of limitations appearing at 42 Pa.C.S. § 5527 controlled the action for interference with a potential contract. Therefore, the trial court held that Bednar's actions were time barred and entered summary judgments in favor of the defendants. Although we disagree with the statutory periods applied by the trial court, we agree that Bednar's actions were time barred.

A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Marks v. Tasman, M.D.*, 527 Pa. 132, 134, 589 A.2d 205, 206 (1991), quoting Pa.R.C.P. 1035(b). In determining whether summary judgment has been properly granted, a reviewing court must examine the record in the light most favorable to the nonmoving party and resolve all doubts against the moving party. *E.J.M. v. Archdiocese of Philadelphia*, 424 Pa.Super. 449, 453, 622 A.2d 1388, 1390 (1993). Summary judgment is proper only in cases where the right is clear and free from doubt. *Marks v. Tasman, M.D., supra*, 527 Pa. at 134–135, 589 A.2d at 206. Summary judgment may properly be entered in favor of a defendant where the plaintiff's cause of action is barred by the statute of limitations. *Bradley v. Ragheb, M.D.*, 429 Pa.Super. 616, 620, 633 A.2d 192, 194

(1993); *A.McD. v. Rosen, M.D.*, 423 Pa.Super. 304, 307, 621 A.2d 128, 130 (1993).

The statute of limitations applicable to a claim for tortious interference with a potential contract is found at 42 Pa.C.S. § 5524(3), which provides that "[a]n action for taking, detaining or injuring personal property ..." must be commenced within two years. See: *Bender v. McIlhatten*, 360 Pa.Super. 168, 173, 520 A.2d 37, 38–39, *allocatur denied*, 515 Pa. 571, 527 A.2d 533 (1987). In general, the statutory period begins to run when the cause of action accrues, or "as soon as the right to institute and maintain a suit arises...." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). Once the prescribed period of limitations has run, a party is thereafter barred from bringing an action for such damages. *Id.* See also: *Bradley v. Ragheb, M.D., supra*, 429 Pa.Super. at 620, 633 A.2d at 194. In this case, any cause of action appellant might have had for Marino's alleged interference with his ability to obtain financing from the bank in 1984 accrued at the point in time in 1984 when the alleged interference occurred. The time within which appellant had to commence an action expired two years later, more than five years before appellant commenced the instant actions. Thus, appellant's cause of action for tortious interference with a prospective contract was barred by the running of the statutory period, and summary judgment was properly entered in favor of appellees with respect thereto.

It is clear that appellant's actions to recover the proceeds from appellees' alleged sale of his inventory or stockpiles of materials were also barred by the running of the statute of limitations. With respect to these causes of action, the trial court determined that either the four year statute of limitations applicable to contract actions, 42 Pa.C.S. § 5525, or the six year period of limitations applicable to an action for an accounting, 42 Pa.C.S. § 5527, was applicable. Again we disagree. Appellant's actions for the allegedly wrongful sale of his materials or inventory are more properly characterized

as actions in tort, or more specifically, actions for the conversion of his personal property.

■■ As a general rule, a tenant does not forfeit or lose title to his personal property by neglecting to remove it from the leased premises after the termination of the lease. This is so even if the tenant fails to remove his personalty within a reasonable time after the expiration of the lease. 49 Am. Jur.2d, Landlord and Tenant, § 1014. Any retention, use or disposal of the tenant's property by the landlord, or any other exercise of dominion over it to the exclusion of the rights of the tenant, constitutes a conversion of the tenant's property by the landlord. *Id.* Here, appellant maintains that appellees sold his goods without his permission. Such action amounts to a disposition of appellant's property by appellees or an "exercise of dominion over it to the exclusion of the rights of [appellant]." *Id.* Conversion actions are subject to the two year period of limitation set forth at 42 Pa.C.S. § 5524(3), *supra.* Accord: *William B. Tenny, Builder and Developer v. Dauphin Deposit Bank & Trust Co.,* 302 Pa.Super. 342, 349, 448 A.2d 1073, 1076 (1982). Thus, any action which appellant may have had to recover the value of his materials or inventory expired two years after they were converted. This is so whether the conversion occurred in 1986 or, as appellant argues, in 1989.

■ Finally, appellant's delay in commencing the present action has also precluded any recovery he might otherwise have had on a theory of quantum meruit.

The equitable doctrine of quantum meruit involves a class of obligations imposed by law, regardless of the intention or assent of the parties for reasons dictated by justice and is based on the concept that no one who benefits by the labor and materials of another should be unjustly enriched thereby. To avoid such unjust enrichment, the law implies a promise to pay a reasonable amount for the labor and materials furnished, even absent a specific contract therefor. In short, this doctrine describes the extent of liability on a

contract implied-in-law for labor and materials and, while there is no contract per se, *the form of action is contract.* *Department of Environmental Resources v. Winn,* 142 Pa. Commw. 375, 381 n. 3, 597 A.2d 281, 284 n. 3 (1991), *allocatur denied,* 529 Pa. 654, 602 A.2d 863 (1992) (emphasis in original deleted, emphasis added). Accord: *Ragnar Benson, Inc. v. Bethel Mart Assoc.,* 308 Pa.Super. 405, 414, 454 A.2d 599, 603 (1982). The four year period of limitations applicable to contracts implied-in-law governs an action based upon a theory of quantum meruit. See: 42 Pa.C.S. § 5525(4); *Ragnar Benson, Inc. v. Bethel Mart Assoc., supra.* In the present case, appellant contends that he was not permitted to sell any of the aggregate which he had cleaned, levelled, stored and processed once the parties' agreement had terminated. Therefore, the statutory period began to run, at the latest, on October 1, 1985, when appellant was precluded from selling the aggregate. After October 1, 1989, any claim for the value of his material and services was barred. Therefore, the summary judgment which was entered in favor of appellees on appellant's claim for the value of his materials and services was proper.

For the foregoing reasons, we conclude that appellant's actions were untimely and in violation of the applicable statutes of limitations. The orders entering summary judgments in favor of appellees, Heights Plaza Materials, Inc. and John E. Marino, Executor of the Estate of John P. Marino, are, therefore,

Affirmed.