## Alberta HOYT

v.

## Gus CHRISTOFOROU and Greek Island Cuisine, Inc., and American Bistro, Interpleader of Trainer and Schantz Associates and Watkins and Mead.

### Appeal of AMERICAN BISTRO, Interpleader of Trainer and Schantz Associates and Watkins and Mead.

Superior Court of Pennsylvania.

Submitted Feb. 3, 1997.

Filed April 8, 1997.

---

John R.K. Solt, Allentown, for appellants.

Daniel Dougherty, Whitehall, for appellees.

Before KELLY, FORD ELLIOTT and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

On September 8, 1995, the Lehigh County Sheriff, acting pursuant to a praecipe for execution of judgment, levied upon certain restaurant equipment located at a strip mall in Allentown, Pennsylvania. On September 29, 1995, property claims were made by two third parties with respect to the equipment. Thereafter, in the absence of a formal hearing, the sheriff determined that the equipment was owned by the property claimants. An objection was promptly made to this *ad hoc* decision, and a formal hearing was scheduled for December 18, 1995.

Following testimony before the Honorable William E. Ford, an order was entered on May 7, 1996. Said order sustained the objection and set aside the sheriff's determination of ownership. Attachment and execution procedures, which were stayed pending the order, were allowed to recommence. This appeal follows.

In order to fully understand the dynamics of this case, and thus properly determine the ownership interests of the respective parties, it is necessary to trace the factual history back several years. In July of 1993, Alberta Hoyt bought $25,000 worth of restaurant equipment from Salsa Blanco. Blanco retained no ownership interest in the equipment. Thereafter, Hoyt began to operate a restaurant business at the same location that Blanco had previously occupied.

Although her lease was not due to expire for several years, Hoyt approached her landlord in August of 1994 and requested to be released from her lease obligations. Hoyt told the landlord, Jeffrey Trainer, of Trainer and Schantz Associates, (Trainer) that Demitrius Zacharopolous and Michael Joannou were interested in occupying her store space. Trainer knew Zacharopolous because Zacharopolous was a leaseholder and tenant of another unit in the strip mall complex in which the restaurant was located.

Hoyt then entered into an installment sales contract with Zacharopolous and Joannou, trading as Serrano, Inc., for the purchase of the equipment. To protect her investment, Hoyt retained a security interest in the equipment. Hoyt, however, failed to ensure that the agreement was filed with the prothonotary.

Serrano, operating its restaurant as Greek Islands Cuisine, Inc., made one installment payment in the fall of 1994, and then defaulted. Hoyt contacted Serrano repeatedly regarding the late payments and was always reassured that payment would be forthcoming. Thereafter, sometime in late December of 1994 or early January of 1995, Serrano told Hoyt that it planned to sell its business to Gus Christoforou, who had been working at the restaurant.

In response to this notice of sale, Hoyt began negotiations with Christoforou. On February 1, 1995, an agreement was reached whereby Christoforou was to assume Serrano's installment payments for the purchase of the equipment and, additionally, to make amends on the missed payments. On February 16, 1995, Hoyt received the first installment payment from Christoforou. On February 23, 1995, the check was dishonored for insufficient funds. Hoyt attempted to contact Christoforou by calling the restaurant, but received no answer. She then went to the store and found that the restaurant doors were padlocked.

Immediately after finding the padlocked doors, Hoyt contacted Trainer and inquired about the business and the whereabouts of the occupants. Trainer indicated that Serrano's rent payments were habitually late and that he had received complaints from other mall tenants that the business was open only sporadically and then, eventually, appeared closed permanently. Trainer had received Serrano's last rental payment, for December, 1994, in January of 1995. Additionally, Trainer indicated that he contacted Zacharopolous at his other mall unit and was told that Zacharopolous had no further interest in the restaurant and would not be making payments. As a result of this, Trainer told Hoyt that he padlocked the doors in late February of 1995, just before Hoyt received notice of the bad check.

Hoyt then told Trainer that she owned certain equipment in the restaurant and requested access to the store. Trainer indicated that he would need proof of ownership before allowing Hoyt to replevy her goods. Soon thereafter, Hoyt sent Trainer copies of the purchase agreement between her and Serrano, which included Hoyt's retention of a security interest, the bill of sale from Hoyt to Serrano and the Hoyt/Christoforou agreement whereby Serrano's interests and obligations were transferred to Christoforou.

Despite this documentation, Trainer told Hoyt that he did not believe she had a rightful claim to the property and refused her admittance. Moreover, Trainer claimed ownership of the property under a theory of abandonment.

Trainer subsequently entered into a new lease for the restaurant space with Watkins and Mead (Watkins), trading as the American Bistro. In addition to the property lease, Trainer negotiated a bill of sale with Watkins purporting to sell the restaurant equipment to Watkins free of all liens and encumbrances. A security interest in the goods was retained by Trainer and a financing statement was filed with the prothonotary. In approximately May of 1995, Watkins began occupying the rental space and, shortly thereafter, operating the American Bistro restaurant.

In August of 1995, Hoyt confessed judgment against Christoforou and Greek Islands Cuisine in the amount of $25,000. After filing praecipes of execution for judgment, Hoyt had the sheriff levy upon the disputed equipment. Following the levy, both Trainer and Watkins filed property claims with the sheriff. The sheriff then unilaterally determined that the equipment belonged to Trainer and Watkins. Hoyt filed an objection to this determination, which led to the December 18, 1995, hearing before Judge Ford.

On appeal, Hoyt, Trainer and Watkins all claim ownership interests in the restaurant equipment. Hoyt avers that the equipment belongs to her because of the security interest that she retained when the goods were sold to Serrano on an installment basis. Because of the default in payment, Hoyt claims, she was entitled to replevy the goods.

Conversely, Trainer claims that the equipment became his property following the early termination of Serrano's lease. In support of this, Trainer offers two theories: (1) the Trainer/Serrano lease allowed the lessor to retain property of the lessee if the lessee did not remove such property following termination; (2) Serrano abandoned the equipment and title was vested in Trainer upon his possession. Therefore, Trainer claims, he lawfully sold the equipment to Watkins and retained an ownership interest by virtue of the filed security agreement.

Lastly, Watkins claims that it was a good faith purchaser for value whose interest should rightfully have priority over an attached but unperfected security interest in favor of Hoyt.[1]

Disposition of these claims requires a thorough analysis of articles 2 and 9 of Pennsylvania's Commercial Code, 13 Pa.C.S.A. 2101 *et seq.;* 9101 *et seq.* The bulk of our analysis centers upon article 9 of the Code, which governs secured transactions.

It is undisputed that in July of 1993, Hoyt owned the restaurant equipment free and clear of third party claims. Hoyt then sold the equipment to Serrano on an installment sales basis. The transaction is within the Code pursuant to 13 Pa.C.S.A. § 9102(a) which provides that article 9 governs, *inter alia,* any transaction intended to create a security interest in goods.

As used in the Code, "goods" is an umbrella term which encompasses four classifications; consumer goods, equipment, farm products and inventory. The goods currently at issue fit within the Code definition of equipment in that they are "used or bought primarily in business" and are not inventory held for sale or lease from the business. *See* 13 Pa.C.S.A. § 9109. The classes of goods in the Code are mutually exclusive, so our classification of the instant collateral as equipment is binding throughout the transaction.

The sales agreement whereby Serrano agreed to make periodic payments and Hoyt retained the right to repossess the equipment for nonpayment became enforceable between the parties upon attachment. That is, once a security agreement was signed by the debtor, value was given and it was determined that the debtor had rights in the collateral. *See* 13 Pa.C.S.A. § 9203. Having found from the facts presented that these three antecedent steps were fulfilled, we find that the August, 1994, sales agreement was legally binding upon the parties thereto.

The importance of this contractual arrangement is underscored in chapter 95 of the Commercial Code, pertaining to default. Specifically, in the event of a default, the secured party has the absolute right to reclaim goods in the possession of a debtor. This may be accomplished through judicial process or, provided it does not cause a breach of the peace, by the secured party itself. *See* 13 Pa.C.S.A. § 9503.

In order to protect an interest against third party claims, however, a party must generally take the additional precaution of perfecting the interest. With limited exceptions, which are delineated in § 9302, perfection requires that the secured party file a financing statement with the proper Commonwealth officers.

After careful review, we find that none of the seven filing exceptions provided in § 9302 apply in the instant matter. It is true that the interest at issue is more properly classified as a purchase money security interest because Hoyt, as seller, retained the interest to secure the purchase price of the goods. The purchase money exception in § 9302, however, is applicable only to interests in consumer goods and not, as is the present case, equipment. Because no exception to the filing requirements is applicable, Hoyt's interest was vulnerable to subordination from later, third party claims.

We must therefore consider whether Trainer acquired a superior interest in the equipment which vested prior to Hoyt's right to replevy the goods. If so, Trainer would have had the right to sell the goods to Wat-

---

**1.** We note that Demitrius Zacharopolous and Michael Joannou, of Serrano, Inc., have not made any claims of ownership to the property. Additionally, it appears that Gus Christoforou has left the jurisdiction and that attempts by the parties to contact him have been unsuccessful.

kins and Trainer's later perfected security interest will have priority over Hoyt's unperfected interest. *See* 13 Pa.C.S.A. §§ 9301(a)(1), 9312(e)(1).

As stated, Trainer relies upon two theories in support of his assertion that ownership of the equipment vested in him and that he therefore had the commensurate right to sell the goods. Initially, Trainer posits that paragraph 11 of the Trainer/Serrano lease permits Trainer, as the lessor, to assume ownership of personal property of the lessee left on the premises following expiration of the lease term. We find that, while paragraph 11 does provide for transfer of ownership with respect to certain property of the lessee, the equipment currently at issue is not affected. Trainer, therefore, cannot rely upon the lease provision to assert rightful ownership to the equipment.

In its entirety, paragraph 11 of the Trainer/Serrano lease reads:

> TRADE FIXTURES. All trade fixtures utilized for merchandising Lessee's goods installed by Lessee in the leased premises shall not become the property of the Lessor and shall be removable at the expiration or sooner termination of this lease or any renewal or extension hereof, provided Lessee shall not at such time be in default under any covenant or agreement contained in this lease, and provided further that in the event of such removal, Lessee shall promptly restore the premises to the same good order and condition they were in prior to the installation thereof, reasonable wear and tear excepted, but not excepting any damage caused by the installation, maintenance or removal of same. If Lessee fails to remove such fixtures as aforesaid, then upon Lessee's removal from the premises all such fixtures shall become the property of the Lessor. Lessee shall give notice to the Lessor of its intent to leave said fixtures on the premises. Nevertheless, if Lessor requires removal of same, Lessee shall remove as aforesaid.

■ As defined in § 9313 of the Code, goods become "fixtures" when "they become so related to particular real estate that an interest in them arises under real estate law." 13 Pa.C.S.A. § 9313. As interpreted by our courts, this normally requires that the goods be physically attached to the lessor's property such that removal would cause damage and permanent alteration of the property. *See, e.g., Kaplan v. I. Kaplan, Inc.,* 422 Pa.Super. 215, 221–22, 619 A.2d 322, 326 (1994); *Feingold v. Win–Vent, Inc.,* 386 Pa.Super. 127, 129–32, 562 A.2d 830, 831–32 (1989); *Catanzaro v. Wasco Products, Inc.,* 339 Pa.Super. 481, 483–87, 489 A.2d 262, 264–65 (1985). Even so, permanently attached goods are not irrebuttably presumed to be fixtures absent an intent to so make them.

Presently, we find that the equipment at issue cannot properly be termed fixtures within the meaning of the Code. Although certainly not exhaustive, a representative sample of the equipment at issue consists of high chairs, cash registers, an ice chest, a fax machine, step ladders, restroom signs, work tables, broilers and fryers. These items are not so related to Trainer's property as to create a real estate interest, and the lease provision allowing for transfer of ownership of a lessee's trade fixtures is therefore inapplicable.

■ Next, Trainer claims ownership of the equipment under an abandonment theory. The pertinent facts surrounding this case, however, obviate any finding that Serrano abandoned the equipment in question. It is well-established that a lessor cannot infer abandonment of a lessee's personal property that remains at the leased premises following the tenant's departure. As we recently held in *Bednar v. Marino,* 435 Pa.Super. 417, 646 A.2d 573 (1994):

> As a general rule, a tenant does not forfeit or lose title to his personal property by neglecting to remove it from the leased premises after the termination of the lease. This is so even if the tenant fails to remove his personalty within a reasonable time after the expiration of the lease. Any retention, use or disposal of the tenant's property by the landlord, or any exercise of dominion over it to the exclusion of the rights of the tenants, constitutes a conversion of the tenant's property by the landlord.

*Bednar*, 435 Pa.Super. at 426, 646 A.2d at 577–78.

It therefore follows that Trainer was not authorized to infer that Serrano's principals abandoned the equipment. This is especially so in light of the cursory investigation made prior to padlocking the restaurant doors. The only contact made by Trainer to one of the leaseholders was to Dimitrius Zacharopolous, who was also a tenant in another store in Trainer's strip-mall complex. Moreover, Zacharopolous only stated that he no longer held an interest in the restaurant; he did not relay that Serrano's other principals had abandoned the enterprise. To the contrary, Zacharopolous told Trainer that Trainer would have to contact Christoforou and/or Joannou to ascertain the current state of the business.

■ Faced with the non-payment of rent and the possible abandonment of the premises, Trainer, as landlord, had two statutorily authorized options. First, Trainer could have obtained a Landlord Lien pursuant to 68 P.S. § 321. Second, Trainer could have availed himself of the distraint remedy provided for in 68 P.S. § 250.101 *et seq.* While the distraint remedy does contemplate sale of the lessee's property, strict notice requirements must be adhered to prior to lawful possession and disposition of the goods.

Instead of availing himself of one of these lawful options, Trainer unilaterally took possession of the equipment by physically barring the occupants of the restaurant from entering the premises. Undoubtedly, this constitutes an unauthorized exercise of dominion and control over the property and, thus, a conversion. *See Bednar, supra* 646 A.2d at 578.

This unlawful conversion of Serrano's equipment was compounded by the subsequent sale of the equipment even though Trainer was put on actual notice of a prior, superior, claim of ownership. As previously stated, Hoyt verbally notified Trainer that she owned the equipment by virtue of a retained security interest granted to her by Serrano. Additionally, Hoyt's claim was buttressed by the Hoyt/Serrano purchase agreement and bill of sale as well as the later Hoyt/Christoforou agreement; copies of which were sent to Trainer.

Despite this notice, Trainer entered into an installment purchase agreement with Watkins wherein Trainer purported to sell the equipment free of any liens or encumbrances. At the time of the sale to Watkins, however, the equipment rightfully belonged to Hoyt because Serrano had defaulted on its installment payments and Hoyt was statutorily authorized to replevy the goods.

■ Watkins argues that, even if Trainer did not own the equipment at the time of the Trainer/Watkins conveyance, Watkins claim to the equipment is superior to Hoyt's. In support of this averment, Watkins cites to § 9301 of the Code, which details those persons whose claims have priority over unperfected security interests such as Hoyt's. Specifically, Watkins relies upon § 9301(a)(3), which reads:

(a) **General Rule.**—Except as otherwise provided in subsection (b), an unperfected security interest is subordinate to the rights of:

\* \* \* \* \*

(3) in the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in the ordinary course of business, or is a buyer of farm products in ordinary course of business, to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it was perfected.

Essentially, Watkins claims that it was a transferee in bulk who received delivery of the goods without knowledge of Hoyt's interest. Therefore, Watkins argues, it qualifies as an innocent purchaser for value who should not have its possessory rights disturbed by an interest of which it had no knowledge. We find that this argument is flawed in several respects.

■ Initially, we note that no one associated with Watkins testified at the court hearing. On appeal, Watkins relies upon Trainer's testimony at the hearing to establish

that Watkins had no actual knowledge of Hoyt's claim of ownership. A person claiming to be a bona fide purchaser for value has the burden of establishing such before receiving the commensurate protections that such status affords. *See generally Carnegie Natural Gas Co. v. Braddock*, 142 Pa. Cmwlth. 383, 387–88, 597 A.2d 285, 288 (1991). We find that Watkins' proffer, which is completely based upon the testimony of Trainer that Trainer did not tell Watkins of the prior claim, to be woefully inadequate.

Moreover, even if we were to accept Watkins claim that it acted without knowledge of Hoyt's interest to be true, we find that § 9301 is not applicable to the present factual situation. Section 9301 contemplates a scenario in which a buyer of goods acquires possession without knowledge that the seller held an encumbered or defective title because an unrecorded security interest had previously been granted to a third party. The instant factual situation is wholly distinct in that the seller (Trainer) was a convertor who had no right or title to the goods. Trainer was not a seller who had encumbered his title and later sold the goods purporting to have good title. Rather, Trainer was a seller with no title.

 Our law is clear that, while a good faith purchaser for value may take good title from a seller with voidable title, the same is not true with respect to a seller with void title. This concept is embodied in Article 2 of the Commercial Code, dealing with Sales.

Section 2403 of the Code states, in pertinent part:

> (a) Transfer of title.—A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased.

When interpreting this provision, our courts have uniformly held that a good faith purchaser from a convertor acquires no interest in the goods bought. *See, e.g., Linwood Harvestore, Inc. v. Cannon*, 427 Pa. 434, 437–38, 235 A.2d 377, 380 (1967); *Underhill Coal Min. Co. v. Hixon*, 438 Pa.Super. 219, 222–23, 652 A.2d 343, 345 (1994) (a

good faith purchaser from a convertor is also a convertor); *Petition of Hennessy*, 343 Pa.Super. 293, 298, 494 A.2d 853, 856 (1985) (In order to obtain voidable title, one must acquire possession with the assent of the original owner).

 Consistent with this precedent, we hold that Watkins cannot claim rightful ownership of the goods because it purchased the equipment from a convertor who was, by law, unable to convey title. Therefore, as among the original owner who retained an unperfected security interest (Hoyt), a convertor (Trainer) and a third party purchaser of the converted goods (Watkins), the original owner has the claim of precedence.

Order affirmed.