J-A20010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FREDERICK J. HELLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CENTURY 21 SMITH HOURIGAN | : | |
| GROUP; DAVID HOURIGAN, AND | : | |
| TONY DESIDERIO | : | |
| | : | |
| Appellees | : | No. 1626 MDA 2016 |

Appeal from the Order Entered August 29, 2016
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  13764 of 2015

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JULY 03, 2019**

Appellant, Fredrick J. Heller, appeals *pro se* from the order entered in the Luzerne County Court of Common Pleas that granted judgment on the pleadings in favor of Appellees, Century 21 Smith Hourigan Group, David Hourigan, and Tony Desiderio, and dismissed Appellant's complaint with prejudice.  For the following reasons, we affirm.

The relevant facts and procedural history of this appeal are as follows.  On March 7, 2005, Appellant bought a property in Mountaintop, Pennsylvania.  Appellees are (1) the real estate company that brokered the sale on behalf of the sellers, (2) the principal of the real estate company, and (3) a real estate agent of the company.  The sellers were John Burick, Elaine Burick, and Patricia Sledziewski.  At the time of the sale/purchase

transaction in 2005, Sledziewski Excavating, Inc. operated a business in an area adjacent to the property sold to Appellant. Sledziewski Excavating, Inc. also parked and stored vehicles and construction equipment in a space behind Appellant's garage.

The sales documents included a standard real estate sales agreement which stated, in relevant part:

> **25.  Release (1-02)**
> Buyer hereby releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES, and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM, or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to…environmental hazards….
>
> \*    \*    \*
>
> **26.    Representations (1-02)**
>
> \*    \*    \*
>
> (B)   It is understood that Buyer has inspected the Property before signing this Agreement…or has waived the right to do so, and has agreed to purchase the Property in its present condition unless otherwise stated in this Agreement.   Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an  independent  examination  or  determination of…environmental conditions…existing in the locale where the Property is situated….

(***See*** Standard Agreement for the Sale of Real Estate (signed and initialed), dated 1/24/05, at 10-11; R.R. at 114A-115A.)

In spring 2006, Appellant began to question the apparent encroachment of Sledziewski Excavating, Inc.'s vehicles and construction

equipment on a corner behind the garage near the rear of his property. After a heavy rainfall, Appellant also began to suspect that a portion of his property might be contaminated, because he noticed a shiny film on top of storm water he observed in that area. On October 20, 2008, Appellant sent a counseled letter to Sledziewski Excavating, Inc. about the "encroachment" and the company's potential responsibility for a petroleum spill from their trucks on Appellant's property prior to his ownership.

In June 2009, Appellant hired RK Environmental Services to perform a Phase II Environmental Assessment on his property. The assessment, dated June 30, 2009, noted the potential presence of petroleum products in the area evaluated and recommended further investigation with equipment that could penetrate the surface to a greater depth. (**See** Phase II Environmental Assessment of RK Environmental Services, 6/30/09, at 1-2; R.R. at 144A-145A.) Appellant also received a letter dated February 16, 2010, from the Pennsylvania Department of Environmental Protection ("DEP"), which enclosed the analytical results of the soil collected from Appellant's property on November 17, 2009. (**See** DEP letter, 2/16/10; R.R. at 147A.)

The record additionally contains a seller's disclosure form (signed on 4/13/10) in which Appellant answered "Yes" in response to the question, "Are you aware of any past or present hazardous substances present on the property (structure or soil) such as, but not limited to, asbestos or

polychlorinated biphenyls (PCBs), *etc*?" (**See** Seller's Property Disclosing Statement, dated 4/13/10, at 4; R.R. at 139A.) In answer to the question, "Are you aware of…any other hazardous substances or environmental concerns that might impact upon the property?" Appellant responded "Yes." (**See id.** at 5; R.R. at 140A.) Appellant further modified his answer stating, "Have suspected contamination from previous owner—I was not made aware at my purchase." (**Id.**) Finally, Appellant answered "Unknown" in response to the question, "Are you aware of any violations of federal, state, or local laws or regulations relating to this property?" (**Id.**) On the form, Appellant wrote, "I don't know how much spillage was done by previous owner—testing ongoing." (**Id.**)

On December 9, 2013, Appellant spoke to a representative of the DEP concerning the contamination on Appellant's property. (**See** DEP Storage System Report Form, Narrative Information, 12/9/13; R.R. at 154A.) The handwritten report of this conversation documented that Appellant knew of the obvious petroleum impacts to the soil on his property as early as June 2009, and knew that the samples collected in November 2009, contained lead and arsenic at levels which exceeded residential statewide health and safety standards.

On December 12, 2013, the DEP sent Appellant a formal letter addressing environmental responsibilities for the lead and arsenic contamination on his property. (**See** DEP Letter, 12/12/13; R.R. at 69A.)

The DEP sent Appellant another letter on September 30, 2014, confirming its receipt of a report documenting remediation activities of soil impacted by the historical storage and maintenance of vehicles and equipment at the referenced property and reporting that soil samples had been collected and analyzed for various toxic compounds and the samples now met the residential statewide health standard for soil. The DEP letter encouraged Appellant to report any future environmental problems if they arose. (**See** DEP Letter, 9/30/14; R.R. at 71A.)

Appellant filed a *pro se* writ of summons against Appellees on December 11, 2015, and a *pro se* complaint against Appellees on January 25, 2016. On February 12, 2016, Appellees filed preliminary objections to Appellant's complaint, in the nature of a motion to strike "scandalous and impertinent" material alleged in the complaint at ¶13, and to require Appellant to attach a copy of the 2005 contract of sale for the property and a copy of the "July 2007" letter referred to in Exhibit A, attached to Appellant's complaint.

On March 3, 2016, Appellant filed a *pro se* amended complaint. Appellees filed an answer with new matter to the amended complaint on March 22, 2016, with exhibits which included: (1) the Standard Agreement for the Sale of Real Estate; (2) an addendum/endorsement to the sales agreement; (3) the handwritten February 23, 2009 letter from Appellant to the Glen Summit Company; (4) a March 12, 2013 email from Appellant to

Andrew Cornell; (5) a photo of a sign Appellant posted on his property in April 2011, that said: "DICK, YOU FORGOT TO TELL ME YOU LEASED CONTAMINATED LAND TO ME"; (6) another photo of the same sign Appellant posted on his property in April 2011; (7) the Seller's Property Disclosure Statement; (8) RK Environmental Services' Phase II Environmental Assessment; (9) David Golebeck's February 16, 2010 letter to Appellant; (10) Gary Marshall's March 18, 2013 letter; (11) Dennis Noonan, Jr.'s January 23, 2013 letter; and (12) the DEP's "Storage System Report From Narrative Information," dated December 9, 2013. On April 11, 2016, Appellant filed a reply to Appellees' answer and new matter in which he admitted the authenticity of Appellees' exhibits but denied, as a conclusion of law, Appellees' affirmative defense that Appellant's claims were barred by the relevant two-year statute of limitations for negligence actions.

On the same day, Appellees filed a motion for judgment on pleadings, based on the expiration of the two-year statute of limitations. Appellant opposed the motion on May 11, 2016, claiming the statute of limitations was tolled until December 12, 2013, when he received the final DEP report, confirming his suspicions of soil contamination on his property. The court entered an order granting Appellees' motion for judgment on the pleadings on August 29, 2016, and dismissed the case with prejudice, based on Appellant's admissions in the pleadings. Specifically, the court stated: "…[Appellant] has by factual averments (Paragraphs 10−27) admitted his

complaint was time-barred by the controlling statute of limitations….” (*See* Order, 8/29/16; R.R. at 201A.)

Appellant filed a motion for reconsideration on September 8, 2016, which the court denied on September 15, 2016. On September 19, 2016, Appellant filed a second motion for reconsideration, which the court denied on September 23, 2016. Appellant timely filed a *pro se* notice of appeal on September 27, 2016. The court did not order Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P 1925(b), and Appellant filed none.

Appellant raises one issue for our review:

> DID THE [TRIAL] COURT ERR OR ABUSE ITS DISCRETION IN GRANTING A MOTION FOR JUDGMENT ON THE PLEADINGS TERMINATING [APPELLANT]'S CASE AS BEING UNTIMELY FILED FOR FAILURE TO FILE WITHIN THE REQUIRED STATUTE OF LIMITATIONS?

(Appellant's Brief at 4).

Appellant concedes the relevant two-year statute of limitations controls but argues the two-year statute of limitations was tolled in his case against Appellees. Even though he began to suspect the existence of contamination on his property in early 2006, Appellant avers his case was not "actionable" until the DEP informed him on December 12, 2013, that the contamination was toxic and required remediation. Appellant contends the statute of limitations did not begin to run until December 12, 2013, when he received the DEP letter. Appellant reasons his action, instituted on

December 11, 2015, was timely because he sued within two years of learning that his injury was actionable.

Appellant further asserts the court erred in determining Appellant's suit was time-barred, based on admissions Appellant made in his responsive pleadings. Appellant alleges these admissions show only that he suspected contamination on his property; the admissions did not show that he had actual knowledge of toxic contamination requiring remediation. Appellant avers the court failed to differentiate between spill contamination and toxic contamination. Appellant concludes the trial court erred in granting Appellees' motion for judgment on the pleadings, and we must reverse and remand for trial. We disagree.

Appellate review of an order entering judgment on the pleadings implicates the following principles:

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings. Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.
>
> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering

only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Southwestern Energy Production Co. v. Forest Resources, LLC*, 83 A.3d 177, 185 (Pa.Super. 2013), *appeal denied*, 626 Pa. 691, 96 A.3d 1029 (2014).

As a preliminary matter, "[a]verments in a pleading to which a responsive pleading is required are admitted when not denied specifically, or by necessary implication." Pa.R.C.P. 1029(b).

In other words, a plaintiff is required to respond to averments which set forth the factual basis in support of an affirmative defense, but is not compelled to answer conclusions of law; therefore, under the fact pleading system in Pennsylvania, the general rule is that averments of fact require denial and the failure to plead to factual averments contained in new matter constitutes an admission to those averments. A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim and any other nonwaiveable defense or objection. Defenses to the statute of limitations, such as estoppel, agreement, agency, apparent authority, fraud, or concealment are waiveable defenses and must be raised in a reply to new matter asserting the statute of limitations as an affirmative defense.

*Devine v. Hutt*, 863 A.2d 1160, 1168-69 (Pa.Super 2004) (internal citations and quotation marks omitted).

"The statute of limitations requires aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made…." *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912, 919 (Pa.Super. 2005), *appeal denied*, 584 Pa. 717, 885 A.2d 985 (2005) (internal citation omitted). "Statutes of limitations are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience." *Kingston Coal Co. v. Felton Min. Co., Inc.,* 690 A.2d 284, 288 (Pa.Super. 1997), *appeal denied*, 549 Pa. 702, 700 A.2d 441 (1997).

As a general rule, the statute of limitations begins to run as soon as the injury occurs; "lack of knowledge, mistake or misunderstanding [does] not toll the running of the statute of limitations…." *Pocono Intern. Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). The right to institute a suit generally "arises when the injury is inflicted." *Fine v. Checcio*, 582 Pa. 253, 266, 870 A.2d 850, 857 (2005) (internal citation omitted). "A party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Pocono Intern. Raceway, Inc., supra* at 84, 468 A.2d at 471. "A plaintiff need not know the precise extent of [his] injuries before the statutory period begins to run."

*Sterling v. St. Michael's School for Boys*, 660 A.2d 64, 66 (Pa.Super. 1995), *appeal denied*, 543 Pa. 695, 670 A.2d 142 (1995).

"The discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period." **Meehan, supra** at 919. The discovery rule provides:

> [W]here the existence of the injury is not known to the complaining party and such knowledge cannot **reasonably be ascertained** within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The "discovery rule" arises from the inability of the injured party, despite the exercise of **reasonable diligence**, to know of the injury or its cause. Its purpose is to exclude the period of time during which the injured party is **reasonably unaware** that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury.

**Kingston Coal Co., supra** at 288-89 (emphasis in original) (internal citation omitted). In other words, the discovery rule tolls the statute of limitations "until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." **Crouse v. Cyclops Industries**, 560 Pa. 394, 404, 745 A.2d 606, 611 (2000). "The statute begins to run when the injured party 'possess[es] sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.'" **Haggart v. Cho**, 703 A.2d 522, 526 (Pa.Super. 1997), *appeal denied*, 553 Pa. 698, 718 A.2d 785 (1998).

"The party seeking to invoke the discovery rule bears the burden of

establishing the inability to know of the injury despite the exercise of reasonable diligence." ***Dalrymple v. Brown***, 549 Pa. 217, 224, 701 A.2d 164, 167 (1997). The reasonable diligence standard "is not a standard of reasonable diligence unique to a particular plaintiff, but instead a standard of reasonable diligence as applied to a 'reasonable person.'" ***Id.*** "[T]he point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." ***E.J.M. v. Archdiocese of Philadelphia***, 622 A.2d 1388, 1391 (Pa.Super. 1993) (internal citation omitted).

Actions sounding in negligence must be commenced within two years. 42 Pa.C.S.A. § 5524(7). Failure to disclose property defects is a tort. ***See generally Bortz v. Noon***, 556 Pa. 489, 729 A.2d 555 (1999). Therefore, Appellant's claim is subject to the two-year statute of limitations. ***See*** 42 Pa.C.S.A. § 5524(7) (stating: "The following actions and proceedings must be commenced within two years: (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter"). In any negligence action, the plaintiff must identify a duty owed by one party to

another; courts have applied a negligence standard to actions involving misrepresentations. ***See Bortz, supra***.

In the instant case, Appellant entered into a sales agreement to acquire the subject property in 2005. The sales agreement included provisions releasing all brokers and sellers from responsibility for any environmental hazards found on the property, a waiver of the right to inspect the property, and an agreement to buy the property in its present condition, or "as is." In spring 2006, Appellant began to question the apparent encroachment of Sledziewski Excavating, Inc.'s vehicles and construction equipment on a corner behind the garage at the rear of his property. After a heavy rainfall, Appellant also began to suspect that a portion of his property might be contaminated, because he noticed a shiny film on a puddle of storm water he observed in that area. On October 20, 2008, Appellant sent a counseled letter to Sledziewski Excavating, Inc. concerning the encroachment and possible contamination.

In June 2009, Appellant hired RK Environmental Services to test the soil on his property. RK Environmental Services discovered the presence of petroleum products in the soil and recommended further testing at a greater depth. Appellant also received a letter dated February 16, 2010, from the DEP, which enclosed the analytical results of the soil collected from Appellant's property on November 17, 2009. The record additionally contains a seller's disclosure form (signed on 4/13/10) in which Appellant

answered "Yes" in response to the question, "Are you aware of any past or present hazardous substances present on the property (structure or soil) such as, but not limited to, asbestos or polychlorinated biphenyls (PCBs), *etc*?" In answer to the question, "Are you aware of…any other hazardous substances or environmental concerns that might impact upon the property?" Appellant responded "Yes." Appellant further modified his answer stating he suspected contamination from previous owner, but Appellant claimed he was not informed of the contamination at the time of his purchase. Finally, Appellant answered "Unknown" in response to the question, "Are you aware of any violations of federal, state, or local laws or regulations relating to this property?" On the form, Appellant wrote, "I don't know how much spillage was done by previous owner—testing ongoing."

On December 9, 2013, Appellant spoke to a representative of the DEP concerning the contamination on Appellant's property. The handwritten report of this conversation documented that Appellant knew of the obvious petroleum impacts to the soil as early as June 2009, and knew that the samples collected in November 2009, contained lead and arsenic at levels which exceeded residential statewide health and safety standards.

On December 12, 2013, the DEP sent Appellant a formal letter addressing environmental responsibilities for the lead and arsenic contamination on his property. The DEP sent Appellant another letter on September 30, 2014, confirming its receipt of a report documenting

remediation activities of soil impacted by the historical storage and maintenance of vehicles and equipment at the referenced property and reporting that soil samples had been collected and analyzed for various toxic compounds and the samples now met the residential statewide health standard for soil. The DEP letter encouraged Appellant to report any future environmental problems if they arose.

Appellant filed a *pro se* writ of summons against Appellees on December 11, 2015, and a *pro se* complaint against Appellees on January 25, 2016. In response to Appellees' preliminary objections, Appellant filed a *pro se* amended complaint on March 3, 2016, alleging Appellant did not have his own broker during the 2005 purchase of the subject property so Appellees acted as **his** agents throughout the purchasing process by assisting Appellant in obtaining a mortgage and answering his questions about the lease and condition of the property. Appellant further claimed Appellees failed to inform him at the time of purchase of the presence of a gravel driveway on the property, or of Sledziewski Excavating, Inc.'s use of the driveway to park and store its vehicles and equipment. Appellant contended Appellees had an obligation to inform Appellant of Sledziewski Excavating, Inc.'s use of the driveway because it amounted to a latent environmental defect on the property. Appellant averred he began to suspect in 2008 that Sledziewski Excavating, Inc. caused environmental contamination on his property, but maintained he had no more than an

unconfirmed suspicion until he received the DEP's letter on December 12, 2013, confirming the presence of lead and arsenic in the soil. Appellant asserted Appellees' failure to disclose the contamination on the property prevented him from selling the property and caused Appellant to incur considerable costs and attorney's fees in his attempt to discover and correct the alleged problem.

Appellees filed an answer with new matter to the amended complaint on March 22, 2016, with exhibits which included: (1) the Standard Agreement for the Sale of Real Estate; (2) an addendum/endorsement to the sales agreement; (3) the handwritten 2/23/09 letter from Appellant to the Glen Summit Company; (4) a 3/12/13 email from Appellant to Andrew Cornell; (5) a photo of a sign Appellant posted on his property in 4/11, that said: "DICK, YOU FORGOT TO TELL ME YOU LEASED CONTAMINATED LAND TO ME"; (6) another photo of the same sign Appellant posted on his property in 4/11; (7) the Seller's Property Disclosure Statement; (8) RK Environmental Services' Phase II Environmental Assessment; (9) David Golebeck's 2/16/10 letter to Appellant; (10) Gary Marshall's 3/18/13 letter; (11) Dennis Noonan, Jr.'s 1/23/13 letter; and (12) the DEP's "Storage System Report From Narrative Information," dated 12/9/13. Appellees also specifically asserted the affirmative defense of the relevant statute of limitations in paragraphs 10 through 27, referring to the various exhibits attached, which revealed that Appellant knew or had reason to know of the

soil contamination well before 2013.  Based on these documents, Appellees averred as follows:

> 28.   The statute of limitations in Pennsylvania for negligence actions is two years.
>
> 29.   [Appellant's] claims against [Appellees] are barred by the two-year statute of limitations, because of [Appellant's] failure to commence this action within two years of the time [Appellant] knew, or had reason to know, that there was possible environmental contamination of his property and that there was a possible encroachment on his property.

(*See* Answer to Amended Complaint and New Matter, 3/3/16; R.R. at 100A-102A.)  On April 11, 2016, Appellant filed a reply to Appellees' new matter in which Appellant admitted the authenticity of all of Appellees' exhibits referenced in paragraphs 10 through 27; but Appellant then simply denied, as a conclusion of law, Appellees' affirmative defense based on expiration of the relevant two-year statute of limitations.

Appellees filed a motion for judgment on the pleadings on April 11, 2016, which the court granted on August 29, 2016, reasoning that Appellant had confessed through the admissions in his pleadings that his complaint was time-barred  The court denied Appellant's motion for reconsideration, again explaining: "[Appellant's] Answer to New Matter in paragraphs 10 through 27 constitute judicial admission to factual averments which substantiate dismissal of the action as time-barred by the applicable statute of limitations.  Those paragraphs refer to multiple exhibits which clearly document a contamination issue [that] would have triggered the initial time

frame to bring an action." (**See** Order, 9/15/16; R.R. 208A.)

Preliminarily, Appellant's reply to Appellees' affirmative defense of the two-year statute of limitations was inadequate. **See Devine, supra**. Here, Appellant admitted the factual basis for Appellant's affirmative defense but then simply denied the defense as a conclusion of law. As a result, Appellant has, in effect, admitted Appellees' assertion that his suit is time-barred. **See id.**; Pa.R.C.P. 1029(b).

Moreover, Appellant's own pleadings revealed Appellant suspected encroachment on his property in 2006, and knew of possible contamination on his property in 2008, when he began to suspect environmental contamination of his property due to Sledziewski Excavating, Inc.'s activities upon and adjacent to his property. Appellant attached to his amended complaint the counseled letter he had sent to Sledziewski Excavating, Inc. on October 20, 2008, in which counsel addressed the company's encroachment and apparent spillage of petroleum products.

Further, in his reply to Appellees' new matter, Appellant admitted the authenticity of Appellees' exhibits. These exhibits showed that Appellant knew of the potential presence of petroleum products in the soil on his property as early as June 2009, following RK Environmental Services' Phase II Environmental Assessment and recommendation for further soil testing. Appellees' exhibits also revealed Appellant acted on his knowledge of the contamination, where Appellant tested the soil on his property multiple times

between 2009 and 2013. Essentially, these pleadings and exhibits demonstrated that Appellant knew about the contamination for more than two years before he initiated the action against Appellees on December 11, 2015. Given his admissions in the pleadings, Appellant cannot invoke the discovery rule to toll the statute of limitations until December 12, 2013. *See Crouse, supra*; *Kingston Coal Co., supra*.

Instead, the statute of limitations began to run once Appellant possessed sufficient critical facts to put him on notice of the contamination and his need to investigate whether he was entitled to redress. *See Haggart, supra*. At the latest, the statute of limitations for a negligence claim began to run in June 2009, when Appellant learned of the presence of petroleum products in his soil and was advised to conduct further testing. *See id.* Appellant's subjective belief that he did not possess "enough" information to file his claim, until he received the DEP's December 12, 2013 letter, failed to toll the statute of limitations. *See id.*; *Sterling, supra*. Appellant did not need to know the precise extent of the contamination before the statute of limitations began to run. *See Sterling, supra*. Rather, Appellant's injury occurred, and the statute of limitations began to run, as soon as Appellant had sufficient critical facts of the contamination. *See Crouse, supra*; *Haggart, supra*. Based on Appellant's admissions in the pleadings, reasonable minds could not disagree that Appellant knew about the soil contamination before December 12, 2013. *See E.J.M.,*

***supra***.    Therefore, the record supports the trial court's decision that Appellant's negligence claim was time-barred.  ***See id.  Compare Nicolaou v. Martin***, ___ Pa. ___, 195 A.3d 880 (2018) (holding when appellant reasonably knew or should have known of appellees' misdiagnosis of multiple sclerosis was question for jury, where appellees told appellant over course of seven years that she had four negative tests for Lyme disease; appellant was later able independently to confirm her Lyme disease diagnosis); ***Gleason v. Borough of Moosic***, 609 Pa. 353, 15 A.3d 479 (2011) (holding when appellants reasonably knew or should have known they had suffered injury from toxic mold was question for jury, where basement flooding occurred in 1993, mold was discovered in 1997, and appellants began to experience health problems in 1997, but appellants did not connect their health problems to toxic mold until they saw television program on topic that aired in 2000).

In any event, Appellant failed to identify the specific nature of his negligence claim against Appellees, who brokered the sale of the property at issue.  Appellant conceded in his amended complaint that a two-year statute of limitations applied to his case, but he did not aver the elements of a negligence cause of action against Appellees.  ***See Roche v. Ugly Duckling Car Sales, Inc.***, 879 A.2d 785, 789 (Pa.Super. 2005), *appeal denied*, 587 Pa. 732, 901 A.2d 499 (2006) (stating "elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship

between the breach and the resulting injury, and actual loss"). In his amended complaint, Appellant alleged that Appellees' failed to disclose the contamination on the property, and the contamination prevented him from selling the property and has caused him to incur considerable costs and attorney's fees in his attempt to discover and correct the problem. Appellant, however, did not identify any duty Appellees owed to him in this regard. *See id.* Appellees were not Appellant's agents in the sale/purchase transaction. Also, the sales agreement included provisions releasing all brokers and sellers from responsibility for any environmental hazards found on the property, Appellant's waiver of his right to inspect the property, and his agreement to buy the property in its present condition, or "as is." Further, Appellant identified the contamination as "known," but he did not aver how or if Appellees knew or had reason to know of the contamination. Appellant simply averred that Appellee David Hourigan knew Sledziewski Excavating, Inc. used a gravel driveway near Appellant's garage. These broad averments in Appellant's amended complaint, however, did not create a direct nexus between Appellees and the alleged contamination. Thus, Appellant failed to make out a cause of action against Appellees for negligence. Based upon the foregoing, we conclude Appellant's negligence claim is time-barred. Accordingly, we affirm.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/3/2019