J-S04016-20

2020 PA Super 91

| SPECTOR GADON & ROSEN, P.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RUDINSKI, ORSO & LYNCH AND JOSEPH F. ORSO, III, ESQUIRE | |
| Appellants | No. 3661 EDA 2018 |

Appeal from the Judgment Entered January 24, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 160700177

BEFORE:  BENDER, P.J.E., STABILE, and MURRAY, JJ.

OPINION BY STABILE, J.:                          **FILED APRIL 7, 2020**

Appellants, Rudinski, Orso & Lynch, ("ROL") and Joseph Orso, III, Esquire, appeal from the January 24, 2019 judgment in favor of Appellee, Spector Gadon & Rosen, P.C. ("SGR").  We vacate and remand for entry of judgment in favor of Appellants.

According to the parties' joint stipulation of facts, Mark Hazelton retained SGR to represent him in an action against Shell Energy Holding GP, LLC d/b/a SWEPI, LP ("SWEPI") for damage to Hazelton's crops resulting from SWEPI's construction of a natural gas pipeline across Hazelton's farm.  Joint Stipulation, 6/21/18, at ¶¶ 5-7.  The retainer agreement (the "Retainer"), which commenced on February 7, 2013 and was amended on July 22, 2013, provided that "any payment made by SWEPI, in connection with a judgment

or settlement against SWEPI, LP, would be paid initially to [SGR] and, after subtracting all outstanding fees and expenses then owed, we would pay the remainder to [Hazelton]." *Id.* at ¶¶ 6-8.

Appellee Joseph Orso, III of Appellee ROL, entered his appearance for Hazelton on October 7, 2014 and succeeded SGR as Hazelton's counsel. *Id.* at ¶ 11. Hazelton and SWEPI reached a settlement agreement on April 1, 2015 for $210,000.00. *Id.* at ¶¶ 12, 36. Orso received the settlement check from SWEPI on April 21, 2015. He deposited the check into his Interest on Lawyers Trust Account ("IOLTA") account. *Id.* at ¶¶ 13-14. Orso wrote a check to ROL for $4,200 and another check to Hazelton's landlord. *Id.* at ¶ 15. Orso paid the remainder of the settlement funds, $191,766.13, to Hazelton on April 22, 2015. *Id.* at ¶¶ 16, 36.

Subsequent to Orso's entry of appearance and prior to settlement, SGR sent to Orso a copy of the Retainer and SGR's outstanding invoices for services performed on Hazelton's behalf. *Id.* at ¶¶ 18-21. SGR and ROL did not enter a written agreement regarding the handling of any settlement or judgment. *Id.* at ¶ 33. As of April 22, 2015, when he disbursed the settlement proceeds to Hazelton, Orso was aware that SGR's outstanding invoices to Hazelton remained unpaid. *Id.* at ¶ 22. Orso did not notify SGR of the settlement between Hazelton and SWEPI. *Id.* at ¶ 24. He filed the praecipe to settle and discontinue Hazelton's action against SWEPI on June 17, 2015. *Id.* at ¶ 29. Hazelton did not compensate SGR for its services. SGR filed suit against

Hazelton and obtained a judgment of $68,660.35, including prejudgment interest. *Id.* at ¶¶ 30-32. That judgment remains unsatisfied. *Id.* at ¶ 32.

On July 6, 2016, SGR commenced this action with a complaint in conversion against ROL and Orso. ROL and Orso filed an answer and new matter on February 7, 2017. The trial court denied SGR's summary judgment motion on October 11, 2017, and the parties proceeded to an October 10, 2018 trial on stipulated facts. The trial court entered a judgment in favor of SGR for $68,660.35. Appellants filed a timely post-trial motion, and the trial court denied relief on November 14, 2018. This timely appeal followed.

Appellants raise a single issue for our review:

> Whether the trial court improperly held the Appellants liable on conversion as there is no legal authority for holding the Appellants liable for following the instructions of the client and no written agreement existed between the parties?

Appellants' Brief at 4.

Because the parties stipulated to the facts, our only task on review is to determine whether the trial court committed an error of law in holding Appellants liable in conversion. Our standard of review is *de novo*. **Stephan v. Waldren Elec. Heating and Cooling, LLC**, 100 A.3d 660, 664-65 (Pa. Super. 2014).

> Conversion is defined as the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. When such an act occurs, the plaintiff may bring suit if he had an immediate right to possession of the chattel at the time it was converted.

*Bank of Landisburg v. Burruss*, 524 A.2d 896, 898 (Pa. Super. 1987) (internal citations and quotation marks omitted), *appeal denied*, 532 A.2d 436 (Pa. 1987). Money can be the subject of conversion. *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. 1987).

The trial court relied on this Court's reasoning in *Bernhardt v. Needleman*, 705 A.2d 875 (Pa. Super. 1997), in which the plaintiff attorney referred a case to the defendant attorney's firm in exchange for a referral fee. The parties agreed to 40% of the 40% contingent fee the defendant attorney would receive upon successful resolution of the case. *Id.* at 876. When the defendant failed to pay, the plaintiff sued for breach of contract and conversion. *Id.* In explaining its basis for holding the defendant liable for conversion, this Court cited the Official Comment to Rule 1.5 of the Rules of Professional Conduct explaining that division of fees commonly occurs between a referring attorney and a trial specialist. Pa.R.P.C. 1.5, comment. The *Bernhardt* Court concluded that the Official Comment language supported a conclusion that the referring attorney and the specialist both have a property right in the fee. *Id.* at 878-79. Thus, "once a fee has been received, the referral fee can be the subject of a conversion." *Id.* at 879.

The trial court also relied on *Burruss*, in which the plaintiff bank lent the defendant farmers money to purchase cattle. The plaintiff seller, who guaranteed the loan, retained a security interest in the cattle. The security agreements entitled the seller to retake possession if the cattle were sold

without his consent. He filed the appropriate financing statements with the Cumberland County Prothonotary. Shortly thereafter, the farmers hired the defendant livestock broker to sell the cattle. The broker did so, unaware of the seller's security interest and without searching for one. The bank filed a conversion action against the farmers (who disappeared), the broker, and the broker's principal. *See id.* at 897-99.

This Court, relying on decisions from other states and federal courts interpreting Pennsylvania law, concluded the broker committed a conversion because it intentionally, if unknowingly, interfered with the seller's secured property right in the cattle. *Id.* at 899. Absent unusual circumstances not applicable in *Burruss* (and not relevant instantly), good faith is not a defense to a conversion. *Id.* at 899-900. The *Burruss* Court also noted that § 9307 of the Pennsylvania Uniform Commercial Code excludes buyers of farm products from its general rule that a buyer in the ordinary course of business takes the product free of any security interest. *Id.* at 900-01 (citing 13 Pa.C.S.A. § 9307). Further, the broker's principal was liable in conversion because he personally arranged all aspects of the sale without searching for a security interest in the cattle. *Id.* at 901.

Relying on the principles set forth in the foregoing case law, the trial court reasoned that SGR, based on the Retainer, had a property interest in the settlement funds from the action between Hazelton and SWEPI. Orso's transfer of the funds directly to Hazelton therefore deprived SGR of its

property. The court noted that SGR made Orso aware of its interest. Further, Orso's belief that he was obligated to transfer the money to Hazelton upon request was not sufficient to relieve Orso of liability for conversion. Trial Court Opinion, 8/1/19, at 6.

We conclude these cases are distinguishable and do not support the trial court's conclusion. **Burruss** is distinguishable because the plaintiff had a security interest in the cattle and because § 9307 of the UCC protects creditors in the case of sales of farm goods. The seller was entitled to the entire purchase price of the cattle by virtue of his security interest. In **Bernhardt**, the parties had a referral fee agreement and therefore their dispute related only to the fee, not the entire settlement. The defendant attorney, not the client, was obligated to split the fee in accord with the agreement. In both **Bernhardt** and **Burruss**, the defendant's conduct fully and finally deprived the plaintiff of the opportunity to recoup its money. They are distinguishable because neither case involved a third party who was obligated to compensate the plaintiff for services rendered, as is the case presently.

More on point is **Fowkes v. Shoemaker**, 661 A.2d 877 (Pa. Super. 1995), **appeal denied**, 674 A.2d 1072 (Pa. 1996), which involved an action between attorneys who successively represented the same client in the same action. The second attorney's retainer provided that he would retain 33 1/3% of any settlement or verdict, rather than his customary 40%, in order to offset the fees the plaintiff would owe to her prior attorneys. **Id.** at 879. The plaintiff

received a settlement of more than $4.2 million, from which the successor attorney took his 33 1/3% fee. *Id.* The original attorney did not receive payment and sought recovery in quantum meruit against the successor. *Id.* This Court held as follows: "[A]n attorney, who initially represented a client and is dismissed, does not have a quantum meruit action against the attorney who ultimately settles the case. […] [T]he initial attorney may have a valid quantum meruit case against the client as of when the attorney was terminated." *Id.* (citing *Styer v. Hugo*, 619 A.2d 347 (Pa. Super. 1993), *affirmed per curiam*, 637 A.2d 276 (Pa. 1994)). The *Fowkes* Court also noted that the agreement between the plaintiff and the successor attorney anticipated that the plaintiff would pay the original attorney's fees. *Id.* at 879.

In *Styer*, three attorneys represented the plaintiff in succession. The first and second attorneys (Styer and Brill, respectively) arrived at a fee sharing agreement, but no such agreement existed between Styer and Hugo, the client's third lawyer. Hugo settled the case and took his contingent fee in accord with his retainer. Hugo reimbursed Styer for out of pocket costs but did not share any portion of the fee with him. Styer filed an unjust enrichment action seeking recovery in quantum meruit. The trial court found in Styer's favor. *Styer*, 619 A.2d at 347-49.

This Court reversed. After analyzing the principles of unjust enrichment and the circumstances of the case, the *Styer* Court concluded that Hugo was

not unjustly enriched, and that Styer failed to protect his own right to compensation. *Id.* at 351-52.

> In sum, the reason Styer has not been paid is that he first failed to avail himself of the right to compensation from the [client] that the law provided him, and then relied on his agreement with Brill, which through no fault of Hugo's, ultimately yielded Styer nothing. *See Meehan* [*v. Cheltenham Twp.*, 189 A.3d 593 (Pa. 1963)]*, supra* (where a party inadequately protects its right to compensation from the direct recipient of its services, it cannot thereafter seek restitution against one indirectly benefited by those services who in no way induced the provision of services).

*Id.* at 352.

Here, as in *Fowkes* and *Styer* and unlike *Bernhardt*, SGR did nothing that legally protected its right to recover from another attorney handling the case. We recognize that a conversion action is legally distinct from an unjust enrichment action, but we believe the underlying principle of *Fowkes* and *Styer*—that the former attorney's right of recovery lies against the client and not against the successor attorney—applies with equal force here. Further, as we explained above, the circumstances of this case are distinct from those in which our courts have permitted recovery in conversion. In this case, we have a third party—Hazelton—who was obligated[1] to compensate the plaintiff for services rendered. To hold Appellants liable for conversion here would be to impose upon them a duty to presume that Hazelton would breach his

---

[1] We express no opinion on whether Hazelton was obligated by express contract or by contract implied in law, as in *Styer* and *Fowkes*.

- 8 -

obligation to SGR.  We find no authority in the law for imposing such a duty. And while SGR was clearly entitled to a portion of Hazelton's recovery from SWEPI, Appellants' conduct did not fully and finally deprive Appellant of the funds.  On the contrary, Appellants provided Hazelton the funds he could use to compensate SGR for services rendered.  Appellants are not liable in conversion for Hazelton's subsequent breach.

Furthermore, we find SGR's reliance on Rule 1.15(f)[2] of the Rules of Professional Conduct unavailing.  In addition to the fact that the Rules of Professional Conduct do not create causes of action, nothing in the parties' joint stipulation of facts supports a conclusion that the Hazelton/SWEPI settlement funds were in dispute as of the date on which Orso disbursed the funds to Hazelton.  The settlement was more than sufficient to compensate SGR for the value of its services—presumably, the amount of the judgment eventually won against Hazelton.

_____

[2] The Rule, which governs safekeeping of property, provides as follows:

> (f) When in possession of funds or property in which two or more persons, one of whom may be the lawyer, claim an interest, the funds or property shall be kept separate by the lawyer **until the dispute is resolved.** The lawyer shall promptly distribute all portions of the funds or property, including Rule 1.15 Funds, as to which the interests are not in dispute.

Pa.R.P.C. 1.15(f) (emphasis added).

For all of the foregoing reasons, we vacate the judgment in favor of Appellee, Spector Gadon & Rosen, P.C. and remand for entry of judgment in favor of Appellants, Rudinsky, Orso & Lynch and Joseph Orso, III, Esquire.

Judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2020