J-A16033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| PIZZA ZONE, LLC, AND PIZZA ZONE II, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | |
| | : | No. 1172 MDA 2022 |
| CATALINA PARTNERS, L.P., COLONIAL PARK MALL REALTY HOLDING, LLC, AND KOHAN RETAIL INVESTMENT GROUP | : | |

Appeal from the Judgment Entered November 4, 2022
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2020-CV-07541-CV

BEFORE:    PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:        **FILED: AUGUST 15, 2023**

In this commercial lease matter, Pizza Zone, LLC, and Pizza Zone II, LLC (collectively, Appellant) appeal from the judgment entered in the Dauphin County Court of Common Pleas, following a non-jury trial and post-trial motions, in favor of Colonial Park Mall Realty Holding, LLC (Appellee). Appellant avers the trial court erred in: (1) denying relief on its claim that Appellee improperly converted restaurant equipment, inventory, and other property; (2) improperly weighing a lay witness' testimony with respect to the value of restaurant equipment; (3) awarding accelerated rent to Appellee, as it resulted in double recovery, where Appellee took repossession of the subject premises and has leased it to a new tenant; (4) denying punitive damages for

Appellee's use of distraint to justify the conversion of property; (5) denying Appellant the return of its security deposit; and (6) awarding Appellee attorneys' fees. With respect to conversion, we determine the court erred in denying relief on Appellant's claim, and thus reverse that portion of the judgment and remand for calculation of the value of the converted property. On the issue of accelerated rent, the trial court agrees it was error to award this to Appellee. We reverse this verdict, however, on the ground Appellee waived it for failing to present any supporting evidence or argument at trial. In light of the foregoing, we vacate the award of attorneys' fees to Appellee and remand for reconsideration. We deny relief on the remaining two issues — distraint and the return of the security deposit. We thus vacate the judgment in part, reverse in part, affirm in part, and remand for further proceedings.

## I. Underlying Facts

The trial court summarized the underlying facts as follows:

[O]n May 20, 2016, [Appellee's predecessor in interest] entered into a ten-year Lease with [Appellant] and its principal [Mohamed] Elbayoumy, to lease commercial space within the Colonial Park Mall for the operation of a pizzeria.[1] The Lease was personally

_____

[1] Appellant entered into the lease with Catalina Partners, L.P., who, in November of 2017, sold its interest to Appellee. *See* Trial Ct. Op., 11/10/22, at 1. Nevertheless, Appellant's 2020 counseled complaint named Catalina Partners, L.P. as a defendant. The complaint also named Kohan Retail Investment Group as a defendant; it was dismissed from the action at trial. *Id.* at 2 n.2.

guaranteed by Elbayoumy. The initial rent was $1,667.67 per month with a scheduled increase in July 2018. . . .

As scheduled, [Appellant's] rent increased in July of 2018 to $2,500 per month. [However, Appellant] continued to pay $1,666.67 over the next fourteen months, through August 2019, resulting in an alleged rental payment deficit of $11,526.62. [Additionally, f]rom September 2019 through April of 2020, [Appellant] allegedly failed to pay rent due in the total amount of $20,000.

[Appellee claimed that o]n April 17, 2020, it provided a written Default Notice to Elbayoumy[,] informing him that [Appellant] was in default for failing to [pay] $31,652.62 in rent. [Appellee] demanded that all amounts due be paid in full immediately[, and if not, Appellee] would seek any remedy available under the Lease, including eviction.

Trial Ct. Op. at 1-2 (paragraph break added).

Appellant did not cure the default, and Appellee filed a complaint on July 14, 2020,

asserting one count against [Appellant] for breach of the Lease and one count against Elbayoumy for breach of his Guaranty. [Appellee] alleged that as a result of defaults under the Lease and Guaranty Agreement, [it] exercised its right under the Lease to peaceably reenter and recover possession of the premises.

[Appellee] sought $251,834.02 in damages jointly against [Appellant] and Elbayoumy, . . . including $44,334.02 for past-due rent, interest and fees, and $207,500.00 for accelerated rent for the entire unexpired balance of the Lease term. [Appellee] also [sought] reasonable costs[ and attorneys' fees[.]

Trial Ct. Op. at 2 (paragraph break added).

- 3 -

On September 27, 2020, Appellant filed a complaint against Appellee,[2]

acknowledging "it made a number of late payments due to poor business," but

alleging Appellee's representative had "told Elbayoumy that because business

was poor at the mall, [Appellant] should continue paying the lower amount."

Trial Ct. Op. at 2. Appellant denied Appellee provided any written notice of

default, and averred a breach of the lease by Appellee's

> preventing it from accessing the property, and effectively
> terminating the Lease prior to its expiration without providing
> notice. [Appellant] sought $5,000 per month in lost income for
> these breaches and the return of its $3,333.34 security deposit.
>
> [Secondly, Appellant] asserted a claim for conversion of all
> [its] restaurant equipment and personal property that had been
> left on the property following the Lease termination. [Appellant]
> claimed] damages [of $80,000] for the value of converted
> restaurant equipment and personal property[, and] an additional
> $10,000 for the value of ingredients and food stock allegedly
> disposed by [Appellee. Appellant] also sought costs and
> attorneys' fees.

*Id.* at 3 (paragraph break added). For ease of discussion, we will refer to all

of the alleged converted property together as the "restaurant equipment."

## II. Trial Evidence

The trial court consolidated the two actions and this matter proceeded

to a two-day non-jury trial on August 30 and September 30, 2021. We review

---

[2] As discussed above, Appellant named additional defendants. *See* n.1, *supra*.

the trial evidence, thoroughly summarized by the trial court. *See* Trial Ct. Op. at 3-11.

First, as Appellant does not presently challenge the award of unpaid rent against it, we briefly recount the following evidence. Sherease Riley, who became Appellee's mall property manager in May of 2020, testified that from July of 2018 to August of 2019, Appellant paid $1,667.67 monthly, although the rent amount was $2,500. Trial Ct. Op. at 3-4. Beginning in December 2018, the rental payments "became sporadic," and the last rental payment was made in February 2020. *Id.* Nevertheless, Riley admitted she had no evidence Appellant was informed, before April of 2020, that it was not paying enough rent. *Id.*

Meanwhile, Elbayoumy testified that in July of 2018, a mall representative told him he could "keep paying the lower rent," although Elbayoumy could not recall this person's name, "had never met him in person[,] and . . . had no written documentation confirming the alleged agreement." Trial Ct. Op. at 7. Nevertheless, Elbayoumy acknowledged he missed the October 2019 and February 2020 rent payments, and that after the mall closed for the COVID-19 pandemic, "he was no longer able to pay rent because he had no business income[.]" *Id.*

Riley, the mall property manager, testified that on April 17, 2020, then-property manager Nikki Fry provided Elbayoumy with a notice of default, *via* email to mohamed250001@hotmail.com. Trial Ct. Op. at 5. Riley was copied

on this email. *Id.* The subject line was "RE: Default Notice," and attached to

the email was the notice itself, which stated:

> **You are hereby given notice of default under your license** agreement effective June 2016 . . . .
>
> **You have failed to pay timely rent per your lease agreement, with charges totaling $31,652.62.**
>
> These charges must be paid in full immediately in order to cure the default. If payment is not made[,] or other arrangements [with Appellee not made, then Appellee] will be free to exercise any and all remedies available to it under the lease and the laws of this state, including . . . commencement of eviction proceedings. Please also note that under the terms of your lease and the applicable law, [Appellee] may be able to collect from you not only this amount, but interest, collection costs and attorney's fees if this matter is not satisfactorily resolved immediately.
>
> If you have any questions regarding this matter, please contact the undersigned immediately by email at nikkilzy@colonialparkmall.com.

Trial Ct. Op. at 5 (emphases added), *quoting* Trial Exh. D-5 (letter

attachment).

Riley testified that the following day, April 18, 2020, Elbayoumy replied

to the email, with his email message "appear[ing] in the same email chain."[3]

Trial Ct. Op. at 5. Elbayoumy, however, denied he received the April 17th

email, yet admitted he sent an email to Fry on April 18th, and verified his

_____

[3] Riley also produced a read-receipt of the April 17th "RE: Default Notice Letter," which reflected "it was read/opened by someone with access to Elbayoumy's email address on June 1, 2020[.]" Trial Ct. Op. at 5, *citing* N.T., 9/30/21, at 41-42.

email address was mohamed250001@hotmail.com. *Id.* at 8. Riley summarized that Elbayoumy's reply stated:

> [H]e was not sure what [Appellee] expected him to do because [Appellant] was not open for business, had no income, and had "lost everything." [N.T. 9/30/21 at 46-47.] He also claimed . . . he should be entitled to a discount for March and April rent. . . .

*Id.* at 5 (some record citations omitted). Meanwhile, Fry informed Appellee's representatives she had conversations about unpaid rent with Elbayoumy, who at times became "angry" or "aggressive." *Id.* at 4, 6. At trial, Elbayoumy denied he was aggressive. *Id.* at 8.

With respect to Appellant's conversion claim, we review the following. Riley testified that on June 18, 2020 (two months after the default notice), she emailed Elbayoumy, informing him: (1) Appellant "would not be allowed to return to its space and that the locks had been changed[;]" (2) Appellee would pack "anything in the store that does not belong to the mall" and schedule time the following week for Elbayoumy to pick it up at the security office; and (3) he could contact the mall office with any questions.[4] Trial Ct. Op. at 6 (record citations omitted).

> Riley later helped box up Elbayoumy's/[Appellant's] belongings and they were placed in the security office. [N.T., 9/30/21, at 41, 77. Riley was] aware that Elbayoumy called someone associated with [the] Mall seeking . . . the return of some specific items including a cell phone and other personal property.

_____

[4] In this same email, Riley stated the rent arrears were now $34,166.63, and noted that "multiple" attempts by her, Fry, and another person "to set up a repayment plan [with Elbayoumy] had been unsuccessful." Trial Ct. Op. at 6.

> [*Id.* at 44.] Riley recalled that those items were then gathered up and brought back to the mall offices. [*Id.*]

Trial Ct. Op. at 6. Riley was later informed "by the head security officer that [E]lbayoumy picked up the boxed items." *Id.* at 7. Riley was not aware of any additional list, email, or letter from Elbayoumy concerning restaurant equipment he believed he was entitled to. *Id.* at 6.

Elbayoumy denied he received this June 18, 2020, email from Riley, and indeed that he ever "had any contact with Riley at any time[.]" Trial Ct. Op. at 9, *citing* N.T., 8/30/21, at 37. Instead, Elbayoumy testified, he emailed Fry (the prior property manager) and "repeatedly called the mall" concerning the status of the mall's reopening, but received no response. Trial Ct. Op. at 8, *citing* N.T., 8/30/21, at 20-21. He learned the mall would reopen on June 19th, and "kept calling so he could ready his store[,] but was told by security they would not allow him in his store." Trial Ct. Op. at 8, *citing* N.T., 8/30/21, at 23.

Additionally, Elbayoumy testified that on June 18, 2020 (the same day as Riley's email), he emailed Appellee's representative, Sharon Edwards, stating, *inter alia*,

> he had observed people in his store on his store security camera. [N.T., 8/30/21, at 25.] He claimed that he had not been informed . . . there was a new tenant on the premises. He [stated] the new tenant, Pizza Anela, which was owned by [his] former . . . employee, was using his restaurant equipment.
>
> Elbayoumy returned to the property on the day the mall reopened (June 19, 2020) in order to open his business but . . . the locks had been changed. [N.T., 8/30/21, at 38-39.]

> Elbayoumy testified that he was never informed why he was locked out and never informed about a new tenant replacing [Appellant.]

Trial Ct. Op. at 8-9 (some record citations omitted).

> Elbayoumy also
>
> broadly claimed that he was never allowed to retrieve his . . . restaurant equipment and personal items. [N.T. 8/30/21 at 26.] He agreed, however, that he never returned to his store after . . . he tried to reopen it on June 19, 2020, . . . never contacted . . . Mall representatives . . . to get his property back from his shop and . . . never provided . . . any list of any items he sought to retrieve. [*Id.* at 37-38, 40. Elbayoumy] also testified that he never contacted the new tenant (his former employee) . . . to inquire about his restaurant equipment. [*Id.* at 40-41, 52.] He claimed that he never sought to retrieve his store equipment and property because he believed he would be going back and opening his business and had no idea why he was not allowed there. [*Id.* at 38.]

Trial Ct. Op. at 9.

With respect to the value of the restaurant equipment, Elbayoumy testified he purchased most of it from the prior tenant on May 20, 2016, the date Appellant commenced its tenancy. Trial Ct. Op. at 9-10, *citing* N.T., 8/30/21, at 9-10. Appellant produced a bill of sale for $25,000, for equipment including "a pizza oven, mixer, slicer, walk-in freezer, walk-in cooler, pizza table, steam table, ice machine, sink, tables and pizza tools." Trial Ct. Op. at 10. Elbayoumy testified he later bought additional restaurant equipment for $12,214.60 and $7,900, respectively, although he acknowledged on the second day of trial some of these figures were mistaken, and requested the court to consider the corrected figures. *Id.*

Even though he allegedly paid approximately $46,000 for his restaurant equipment (less the items he later agreed should be excluded), Elbayoumy claimed the value was much higher because he had purchased the items at discount. [N.T., 8/30/21, at 28.] Elbayoumy testified that it would cost him about $80,000 to buy used replacement restaurant equipment[. *Id.* at 32.] He later admitted, however, that he had no idea the value he could expect to obtain if he were to sell the original restaurant equipment (bought for $25,000). [*Id.* at 36.]

Trial Ct. Op. at 10. Finally, Elbayoumy testified the leftover frozen food items, which he valued at $10,000, were "still good and usable by the new tenant." *Id.* at 10. However, "he admitted he had not itemized them nor had any invoices reflecting their cost or existence." *Id.*

Appellee presented the testimony of Donald Barlup, who had been in the business of buying and selling restaurant equipment for 38 years. Trial Ct. Op. at 10. Barlup had sold, at Elbayoumy's request, some of its equipment on consignment. Barlup

offered his opinion as to the value of individual items of equipment[, and] calculated the total value of all items identified to be $18,830.60.[ ] [N.T., 9/30/21, at 81-88.] Barlup declined to provide an opinion as to the value of the [Appellant's] point-of-sale system, air conditioner, and paper products or foods, because he did not deal in those items. [*Id.* at 89.]

Trial Ct. Op. at 11.

As stated above, the testimony was taken on August 30 and September 30, 2021. The trial court directed both parties to file proposed findings of fact and conclusions of law, and they complied.

### III. Initial Verdict & Post Trial Motions

On February 3, 2022, the trial court issued an initial verdict. It: (1) found Appellant defaulted under the terms of the lease for nonpayment of rent, and accordingly awarded Appellee $31,652.62 for rent due; and (2) found Appellee improperly converted some of Appellant's equipment, and awarded Appellant $17,239.63. Order, 2/3/22, at 1-2 (unpaginated). We note the court did not award accelerated rent to Appellee. Additionally, the court denied counsel fees to either party, reasoning they both prevailed on their claims.[5] *Id.* at 2.

Both parties filed post-trial motions. On July 21, 2020, the trial court issued two orders — the first of which denied Appellant any relief. The second order granted relief to Appellee. It continued to award it $31,652.62 for unpaid rent, and additionally awarded accelerated rent on the balance of the lease, in the amount of $212,500, along with prejudgment interest. The court also reversed its verdict on Appellant's claim of conversion, now awarding it no damages or relief. Finally, the court awarded Appellee attorneys' fees and costs in the amount of $33,450.78. Order, 7/21/22, at 1-2 (unpaginated).

---

[5] On February 15, 2022, the trial court issued an "Amended Order and Verdict," which set forth the same findings and judgment, but further noted the two parties' actions had been consolidated.

Appellant filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

**IV. Statement of Questions Involved**

Appellant presents the following six issues for our review:[6]

1. Whether the Trial Court erred as a matter of law and/or abused its discretion in its Order dated July 21, 2022 by awarding no damages to [Appellant] when such a decision is against the weight of the evidence, such evidence showing that the restaurant equipment, ingredients, food stock, or inventory had some value?[ ]

2. Whether the Trial Court erred as a matter of law and/or abused its discretion in accepting the testimony of Mr. Barlup as to the value of the converted property when he was not admitted as an expert in restaurant equipment valuations nor intimately familiar with all of the items and equipment located at the leased Property?

3. Whether the Trial Court erred as a matter of law and/or abused its discretion by failing to consider [Appellee's] egregious and unconstitutional use of distraint to justify the conversion of personal property?

4. Whether the Trial Court erred as a matter of law and/or abused its discretion by failing to consider the value of the security deposit of $3,334.34 or applying it to the judgment?

5. Whether the Trial Court erred as a matter of law and/or abused its discretion by awarding accelerated rent when the Mall took clear possession, and re-leased the space immediately after taking possession from [Appellant]?

6. Whether the Trial Court erred as a matter of law and/or abused its discretion in its by awarding the Mall attorney's fees and costs?

---

[6] We have reordered the issues for ease of review.

Appellant's Brief at 3-4.

## V. Standard of Review

At this juncture, we note the relevant standards of review:

Our appellate role in cases arising from non[-]jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

[Moreover, t]he trial court, as the finder of fact, is free to believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

***Davis v. Borough of Montrose***, 194 A.3d 597, 605 (Pa. Super. 2018)

(citation omitted). Furthermore,

[w]e review a trial court's ruling on a post-trial motion challenging the weight of the evidence for an abuse of discretion. A party is entitled to a new trial based on the "weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. [A party] is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way."

***Brown v. Halpern***, 202 A.3d 687, 703 (Pa. Super. 2019) (citations omitted).

## VI. Conversion of Restaurant Equipment

First, Appellant challenges the trial court's finding that no conversion occurred because it (Appellant) did not demand return of the contested restaurant equipment.[7]  Appellant maintains that on June 24, 2020 — within days of Appellee's email to Appellant that it was now locked out[8] — Appellant's counsel sent a letter to Appellee demanding access to the property so that Elbayoumy could recover personal and business property.  Appellant's Brief at 14-15.  Appellant concludes the denial of damages, for conversion, was against the weight of the evidence.  *Id.* at 14.  For the following reasons, we reverse the trial court's verdict on the conversion claim and remand for further proceedings.

This Court has explained:

Conversion is defined as the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification.  When such an act occurs, the plaintiff may bring suit if he had an immediate right to possession of the chattel at the time it was converted.

---

[7] We reiterate the trial court initially found Appellee converted Appellant's property and awarded Appellant $17,239.63 in damages.  However, the court reversed on post-trial motions, finding Appellant failed to prove any conversion.  Trial Ct. Op. at 14.

[8] Appellant characterized this email from Appellee — that it had changed Appellant's locks — as sent on June **14**, 2020.  Appellant's Brief at 14.  However, Riley testified she sent the email on June **18th**.  N.T., 9/30/21, at 42.

***Spector Gadon & Rosen, P.C. v. Rudinski, Orso & Lynch***, 231 A.3d 923,

925 (Pa. Super. 2020) (citation omitted).  Conversion may be committed by:

> (a) Acquiring possession of the goods, with an intent to assert a right to them which is in fact adverse to that of the owner[;] (b) Transferring the goods in a manner which deprives the owner of control[;] (c) Unreasonably withholding possession from one who has the right to it[; or] (d) Seriously damaging or misusing the chattel in defiance of the owner's rights.  Prosser, Torts, § 15 (2d ed. 1955).

***Norriton E. Realty Corp. v. Cent.-Penn Nat'l Bank***, 254 A.2d 637, 638

(Pa. 1969) (quotation marks omitted).

With respect to a tenant's property that remains on leased premises,

this Court has stated:

> As a general rule, a tenant does not forfeit or lose title to his personal property by neglecting to remove it from the leased premises after the termination of the lease.  This is so even if the tenant fails to remove his personalty within a reasonable time after the expiration of the lease.  49 Am.Jur.2d, Landlord and Tenant, § 1014.  Any retention, use or disposal of the tenant's property by the landlord, or any other exercise of dominion over it to the exclusion of the rights of the tenant, constitutes a conversion of the tenant's property by the landlord.  ***Id.*** . . .

***Bednar v. Marino***, 646 A.2d 573, 577-78 (Pa. Super. 1994).  "It is well-

established that a lessor cannot infer abandonment of a lessee's personal

property that remains at the leased premises following the tenant's

departure."  ***Hoyt v. Christoforou***, 692 A.2d 217, 222 (Pa. Super. 1997)

(citing above passage in ***Bednar***).

We further consider: "Although the exercise of control over the chattel

must be intentional, the tort of conversion does not rest on proof of specific

intent to commit a wrong." ***McKeeman v. Corestates Bank, N.A.***, 751 A.2d 655, 659 n.3 (Pa. Super. 2000), *citing **Norriton East Realty Corp.***, 254 A.2d at 638.

Finally, we note:

> [C]ontract interpretation is a question of law, [and] this Court is not bound by the trial court's interpretation. Our standard of review . . . is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Ruby v. Abington Mem'l Hosp.***, 50 A.3d 128, 132 (Pa. Super. 2012) (citation omitted).

We now review the trial court's reasoning for finding Appellant failed to establish conversion. The court relied on the following statement in ***Norriton E. Realty Corp.***:

> "A defendant **who has come rightfully into possession** in the first instance, as for example by a bailment, becomes a converter when he refuses to deliver on demand. Since there has been no wrongful taking or disposal of the property, demand and refusal are necessary to complete the tort."

***Norriton E. Realty Corp.***, 254 A.2d at 63915 (emphasis added); ***see*** Trial Ct. Op. at. The trial court extrapolated that when a party rightfully comes to possess property, the other party, who is claiming conversion, must show there was a demand for the return of property and then a refusal. ***See*** Trial Ct. Op. at 15.

The trial court then considered a provision in the parties' lease, that in the event of Appellant's default, Appellee could "peaceably reenter and

**recover possession of the Premises** and occupy or permit the occupancy of the whole or any part thereof." Lease Agreement, 5/20/16 (Lease) at § 13.02(a)(ii) (emphasis added); **see** Trial Ct. Op. at 15. The court interpreted the term, "the Premises," in the above provision, to "includ[e] the restaurant equipment and other personal items[.]" **Id.** Thus, the court reasoned: (1) because Appellant defaulted on the lease, Appellee rightfully came into possession of not only the leased space but **also** the restaurant equipment; and (2) to establish conversion pursuant to the above statement in **Norriton E. Realty Corp.**, Appellant was required to show it demanded return of the property and Appellee subsequently refused. **Id.** at 15-16.

First, we agree that under the lease terms, if Appellant defaulted, Appellee had the right to "reenter and recover possession of **the Premises**." **See** Lease at § 13.02(a)(ii) (emphasis added). However, we disagree with the trial court's interpretation that the phrase, "the Premises," included restaurant equipment, inventory, and other business or personal property. We note the lease did not include any definitions section. However, the lease's first paragraph refers to the term, the "Premises," as follows: Appellee was leasing to Appellant "approximately [779] square feet of ground floor area (**the 'Premises'**)." Lease at § 1.01 (emphasis added). There was no mention the "Premises" would include restaurant equipment or other property located within the leased space, and certainly not property acquired by Appellant following the commencement of the lease. Thus, we construe the term the

"Premises" to mean only the 779 square feet of empty space, **exclusive** of any restaurant equipment, or business or personal property. *See Ruby*, 50 A.3d at 132 (this Court is not bound by trial court's interpretation of a contract). Accordingly, we disagree with the trial court's finding that Appellee came to rightfully possess the restaurant equipment.

Nevertheless, we next consider whether the trial court erred in concluding Appellant's failure to demand return of the restaurant equipment thwarted his claim of conversion. The court found: (1) Elbayoumy was not credible in testifying "he was never allowed to retrieve" the restaurant equipment and personal items; (2) Appellee had explicitly advised Appellant everything would "be boxed up" and it would schedule time for Elbayoumy "to retrieve items from its store [but he] never responded[;]" and (3) "Elbayoumy offered no specific testimony or evidence . . . of any attempts . . . to retrieve his restaurant equipment and other items[.]" Trial Ct. Op. at 16.

Appellant's sole argument on appeal is that his counsel did send a demand letter on June 24, 2020.[9] Appellee points out, we note correctly, that Appellant has not provided any citation to the place in the record where evidence about this letter was presented. *See* Appellee's Brief at 6. The list of trial exhibits does not include such a letter. *See* N.T., 8/30/21, at 2; N.T.,

_____

[9] We note Appellant does not argue, as we have determined above, that the trial court erred in finding Appellee came to rightfully possess the restaurant equipment. *See* Appellant's Brief at 14-15.

- 18 -

9/30/21, at 2. The trial court's thorough, nine-page recitation of the trial evidence did not refer to such a letter. *See* Trial Ct. Op. at 3-11.

Nevertheless, the case authority set forth above does not require Appellant to have made a demand for the return of its property, where, again, Appellee did **not** come to rightfully possess the property. Instead, all that is required was Appellee's exercise or dominion over the property to the exclusion of Appellant's rights. ***See Norriton E. Realty Corp.***, 254 A.2d at 638 (conversion may be committed by: (1) acquiring possession of the goods, with intent to assert a right to them that is adverse to that of the owner; (2) transferring the goods in a manner which deprives the owner of control; or (3) unreasonably withholding possession from one who has the right to it); ***Spector Gadon & Rosen, P.C.***, 231 A.3d at 925 (conversion is the deprivation of another's right to, use of, or possession of property, without the owner's consent and without lawful justification, and when such an act occurs, the plaintiff may bring suit if he had an immediate right to possession); ***McKeeman***, 751 A.2d at 659 n.3 ("conversion does not rest on proof of specific intent to commit a wrong.").

Appellee did not claim at trial Appellant lost its rights to the restaurant equipment. Instead, Appellee emphasized it offered to "box up" or pack presumably smaller items, and Elbayoumy in fact retrieved these items, but did not demand return of the restaurant equipment or any other larger property. Nevertheless, we note Appellee's June 18, 2020, email was sent

while the mall was closed for the COVID-19 pandemic, and informed Elbayoumy the locks had already been changed and Appellant was not permitted to return to its space. *See* Trial Ct. Op. at 6, 9. Furthermore, Elbayoumy gave undisputed testimony that by June 18th, he had "observed people in his store on his security camera" and saw a former employee "using his restaurant equipment." *See id.* at 8-9.

The overall evidence, even if credited in Appellee's favor, supported a finding that Appellee deprived Appellant of its rights, use, or possession of its restaurant equipment, inventory, and other personal and business property. *See Spector Gadon & Rosen, P.C.*, 231 A.3d at 925. Appellant's mere neglect to remove the restaurant equipment after termination of the lease, even after "a reasonable time" had passed, did not result in forfeiture of the property. *See Bednar*, 646 A.2d at 577-78. In light of all the foregoing, we determine the trial court erred in denying relief and damages on Appellant's conversion claim. We thus reverse the judgment in favor of Appellee on the conversion claim.

As to the proper amount of damages, we note the trial court's initial verdict awarded Appellant $17,239.63 "for the value of the converted property." Order, 2/3/22, at 2. There was no discussion, however, of what items were converted nor their values. In the absence of any discussion of how the court calculated this sum, we decline to simply reinstate this amount. Instead, we remand for the trial court to: review the evidence and testimony

presented at trial, along with the parties' arguments; itemize the particular kitchen equipment, inventory, food stock, business and personal property, and any other items converted by Appellee; and determine the proper value of each converted item.[10] ***See Lynch v. Bridges & Co., Inc.***, 96, 678 A.2d 414, 416 (Pa. Super. 1996) ("The trial judge, siting as fact finder has broad discretion to determine damages in conversion cases[;]" "[T]he fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive, proof."). The court may also consider the relevance, if any, of the current use of the property — for example, whether Appellee has conveyed to a new tenant the purported right to use or purchase the property, or whether Appellee's new lease with a tenant included use of the converted restaurant equipment and if so, the added value thereof to Appellee. The court may also consider, upon proper argument by the parties, whether Appellant is entitled to, or desires, return of the property, and the effect of such return on the amount of damages. Finally, the court may direct the parties to file briefs, or conduct oral argument, or undertake other action necessary to this determination.

---

[10] The trial court may also consider whether non-movable fixtures were converted. ***See*** N.T., 9/30/21, at 81 (testimony of Barlup that the kitchen hood is "attached to the wall"). We offer no opinion on this question.

## VII. Value of Alleged Converted Property

In its second issue, Appellant challenges the weight of the testimony of Appellee's witness, Barlup, as to the value of the restaurant equipment allegedly converted by Appellee. Appellant's Brief at 9. Appellant points out that while the trial court and Appellee's counsel made a brief reference to the possibility of Barlup testifying as an expert,[11] Appellee did not, in fact, present Barlup as an expert. *Id.* at 11-12, *citing* N.T., 9/30/21, at 77 (discussed *infra*). Nevertheless, Appellant contends, the trial court improperly "elevated" Barlup's testimony to that of an expert, and he (Appellant) was "unfair[ly] surprise[d]" by this expert testimony. Appellant's Brief at 9, 13.

In light of our remand for the trial court to weigh all the trial evidence presented and determine the proper amount of damages for conversion, we conclude no further review of this issue is necessary. *See Printed Image of York, Inc. v. Mifflin Press, Ltd.*, 133 A.3d 55, 59 (Pa. Super. 2016) ("An issue before a court is moot 'when a determination is sought on a matter

_____

[11] We note Barlup initially testified he sold some of Appellant's equipment on consignment, listing the sold items and correlating prices. N.T., 9/30/21, at 25-28. Appellant declined to conduct any cross-examination. *Id.* at 30. After another witness testified, the trial court asked whether Barlup was still available to testify, and Appellee's counsel responded he was. *Id.* at 77. The trial court then commented, "Wouldn't he be an expert?," and Appellee's counsel stated, "I believe he would be an expert." *Id.* However, upon recalling Barlup to testify, Appellee again did not present him as an expert witness. *Id.* at 79.

which, when rendered, cannot have any practical effect on the existing controversy.'") (citation omitted).

## VIII.  Distraint of Property

Next, Appellant contends Appellee "previously" argued it was "allowed to distrain [Appellant's] property based on 68 P.S. § 250.302" of the Landlord and Tenant Act of 1951.[12]  Appellant's Brief at 15.  Appellant points out, however, this statute was found unconstitutional in **Smith v. Coyne**, 722 A.2d 1022 (Pa. 1999), and thus argues the trial court erred in "failing to consider [Appellee'] egregious and unconstitutional use of distraint to justify the conversion of personal property."  Appellant's Brief at 15.

Appellee responds Appellant has "not in any way explain[ed] how any alleged exercise of distraint . . . informed the Trial Court's overall adjustment of the parties' respective financial positions."  Appellee's Brief at 7.  We agree. Appellant does not provide any explanation for Appellee's "previous[ ]" reliance on distraint and, saliently, does not explain when or how the trial court ruled or granted relief on the theory of distraint.  **See** Appellant's Brief at 15-16.  Our review of the trial court's opinion reveals no mention of it.

---

[12] 68 P.S. §§ 250.101-250.602.  **See** 68 P.S. § 250.302 ("A landlord or such agent may also, in the manner above provided, distrain personal property located on the premises but only that belonging to the tenant, for arrears of rent due on any lease which has ended and terminated, if such distress is made during the continuance of the landlord's title or interest in the property.").

Instead, the trial court reviewed in detail the issue of conversion. *See* Trial Ct. Op. at 14-18. In the absence of **any** discussion by Appellant of when or how the trial court considered distraint, much less granted relief on it, we conclude this vague claim does not merit relief. *See* Pa.R.A.P. 2119(a) (argument shall include "such discussion and citation of authorities as are deemed pertinent").

## IX. Denial of Return of Security Deposit

In its fourth issue, Appellant asserts the trial court erred in failing to award the return of its security deposit, in the amount of $3,334.34. The trial court suggests this issue is waived, for Appellant's failure to present any evidence at trial, and raising it for the first time in the post-trial motion. Trial Ct. Op. at 19. Appellant responds the issue was not waived because the lease, "which speaks for itself," was presented as an exhibit at trial, and counsel's opening statement stated it was seeking return of the security deposit. Appellant's Brief at 16-17. We agree this issue is waived.

First, we note the lease: was printed in small type; spanned 20 pages (excluding the signature pages); was apportioned into 20 major articles, each further divided with subheadings; and comprised at least 137 paragraphs. We disagree with Appellant's contention, which is not supported by citation to any law, that the mere presentation of this particular, lengthy lease at trial encompassed an actionable claim for the return of its security deposit. *See* Appellant's Brief at 17. Appellant's reliance on in its **opening statement**

does not cure its failure to present **evidence** on this issue.[13]  Accordingly, the issue is waived and no relief is due.  **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); ***Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc.***, 892 A.2d 830, 835 (Pa. Super. 2006) ("The appellate rules direct that an issue must be raised in the trial court in order to provide that court with the opportunity to consider the issue, rule upon it correctly, and obviate the need for appeal.").

## X.  Award of Accelerated Rent to Appellee

In its fifth issue, Appellant avers the trial court erred in awarding Appellee accelerated rent in the amount of $212,500.  Appellant maintains that because Appellee took repossession of the premises, the accelerated rent award resulted in an improper double recovery.  Appellant's Brief at 18.

In its opinion, the trial court agrees it was an improper double recovery.[14]  Trial Ct. Op. at 20-21, *citing* ***Ferrick v. Bianchini***, 69 A.3d 642,

---

[13] Appellant's opening statement, spanning three pages, was relatively brief. The sole reference to the security deposit was in sum: "[Appellant is] seeking damages in the amount of $80,000 for . . . all the equipment [it] has, plus $10,000 for the disposed food that was frozen and was still good which [it] never got back, **plus the unreturned security deposit of [$3,333.34]**, and the cost of this action, attorney's fees, and other such relief as the Court may deem reasonable."  N.T., 8/30/21, at 6 (emphasis added).

[14] On appeal, Appellee acknowledges that in a confession for judgment, "a landlord may not both confess judgment for possession and seek accelerated rent."  Appellee's Brief at 9.  However, it argues, if a "full trial" has been
*(Footnote Continued Next Page)*

656 (Pa. Super. 2013) ("If the landlord terminates the lease and evicts the tenant before the acceleration clause is enforced, the landlord cannot recover rent for the post-eviction period."); ***Homart Dev. Co. v. Sgrenci***, 662 A.2d 1092, 1100 (Pa. Super. 1995) (*en banc*) (landlord may cumulate remedies provided in the lease, but he may not avail himself of double remedies; he can eject the tenant and enter judgment for the rent accrued when the tenant was evicted, but cannot recover both the possession and the rent for the balance of the term). We reverse the court's verdict on this issue on other grounds — that Appellee waived its claim for failure to pursue it at trial.

We note Appellee's complaint: (1) averred that under Section 13.02(f) of the lease, it was entitled to accelerate future rent payments; and (2) demanded $207,500 for accelerated rent for the entire unexpired balance of the lease term.[15] Appellee's Complaint, 7/14/20, at 3-4. At trial, however,

conducted, a landlord **may** take both possession and accelerated rent, provided the latter is subject to credit for any rent received from a successor tenant. ***Id.*** Appellee then contends that here: (1) Appellant failed to present evidence of "what, if any, rent had been received by Appellee[ ] following" the repossession; (2) "[t]his was a failure of Appellant[ ] to develop a mitigating defense[;]" and (3) the award of accelerated rent should be affirmed. ***See id.*** at 9-10. In light of our disposition, we do not reach the merits of the trial court's or the parties' arguments on appeal.

[15] Subsection 13.02(f) of the lease provides that upon default by Appellant, Appellee "shall have the right to accelerate the whole or any part of the [rent] for the entire unexpired balance of the Lease Term[.]" Lease at § 13.02(f). Furthermore, Subsection 13.02(b) provides that upon Appellant's default, Appellant "shall be liable for . . . all rent through the remainder of the Lease Term[.]" Lease at § 13.02(b).

neither the parties nor the trial court addressed the lease provisions regarding rent acceleration. Saliently, Appellee presented no argument or evidence regarding accelerated rent, such as the number of months remaining on the lease term or a calculation of the total amount that would have been due.[16] Although Appellee's **post-trial** proposed findings of fact and conclusions of law sought accelerated rent of $212,500, its sole evidentiary support was Appellant's trial Exhibit 1 — which was the lease itself — and its own Exhibit 3 (entitled "Pizza Zone Reconciliation").[17] Appellee's Proposed Findings of Fact & Conclusions of Law, 11/1/21, at 10. However, at trial, Appellee's own counsel accurately described Exhibit 3 as a spreadsheet listing the late or unpaid rent amounts between January 1, 2018, and of April 1, 2020 — which we note was $31,652.62. **See** N.T., 9/30/21, at 34-35; Appellee's Exhibit 3. The exhibit makes no mention of the future rent that would be due thereafter,

_____

[16] We note there was one reference at trial to "accelerated rent," but it was made by the trial court and appeared to be a misstatement. The court addressed Riley during her testimony: "Did you find any person named Mike that would have had the authority to . . . tell the [Elbabyoumy] that he didn't have to pay the **accelerated rate**?" **See** N.T., 9/30/21, at 40 (emphasis added). However, the surrounding questions and responses concerned about the increase of the rent amount, from $1,666.67 to $2,500 as of July of 2018. **See id.** at 37-41; **see also id.** at 41 (trial court asking whether "Mike Kohan [had] the authority to tell [Elbayoumy about] his **rent escalation**"). There was no discussion about the amount of post-breach rent due or accelerated rent.

[17] **See** N.T., 9/30/21, at 3 (Index to Exhibits).

over the remaining, unexpired lease term. Nothing in the exhibit supported Appellee's claim for $212,500 in accelerated rent.

We thus conclude that in the absence of any evidence or argument presented at trial in support of its claim for accelerated rent, the trial court erred in awarding accelerated rent to Appellee. Accordingly, we reverse this award.

### XI. Award of Attorneys' Fees to Appellee

In Appellant's sixth and final issue, it avers the trial court erred in awarding Appellee attorneys' fees and costs in the amount of $33,450.78. Appellant's sole supporting argument is that Appellee did not admit evidence of its attorneys fees into the record at trial.[18] Appellant's Brief at 18.

In its initial verdict, which found in favor of Appellee on unpaid rent but in favor of Appellant on conversion, the trial court denied both parties attorneys' fees on the ground "each party prevailed on their claim." Order, 2/3/22. In support of its amended verdict which did award attorneys' fees to Appellee, the trial court cited the lease provision that a "prevailing party in . . . litigation shall be entitled to recover its reasonable attorney's fees . . . from the other party." Trial Ct. Op. at 21.

---

[18] In its opinion, the trial court noted Appellee asserted "[i]n its Proposed Findings of fact and Conclusions of Law" that it incurred $15,795 in attorneys' fees, $16,900 in "additional fees," and $755.78 "in out-of-pocket costs." Trial Ct. Op. at 21.

As both this Court and the trial court have now determined Appellant is entitled to relief on the accelerated rent claim, and this Court has further reversed the denial of relief to Appellant on its conversion claim, we hereby vacate the award of attorneys' fees to Appellee. On remand, the trial court shall consider anew whether each party is entitled to attorneys' fees, in conjunction with the other issues remanded for further review.

## XII. Conclusion

In sum, we: (1) reverse the judgment in favor of Appellee on Appellant's claim of conversion, and remand for the trial court to determine the proper amount of damages in favor of Appellant; (2) reverse the $244,152.62 award of accelerated rent to Appellee, on the ground Appellee failed to present any relevant evidence or argument at trial; (3) vacate the $33,450.78 award of attorneys' fees to Appellee, and remand for reconsideration of whether either party is entitled to attorneys' fees, and if so, in what amounts; and (4) deny relief on Appellant's remaining issues. Accordingly, we vacate the judgment in part, reverse in part, affirm in part, and remand for further proceedings consistent with this memorandum.

Judgment vacated in part, reversed in part, and affirmed in part.  Case remanded for further proceedings.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/15/2023